Joyce M. BLOUNT, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, et al., Appellees.

No. 14039.

Court of Appeals of Texas, Austin.

May 23, 1984.

Rehearing Denied Sept. 12, 1984.

Joseph Hunter, Alvin, for appellant.

Jim Alsup, Gary A. Thornton, Small, Craig & Werkenthin, Austin, for Metropolitan Life Ins. Co.

Jim Mattox, Atty. Gen., Susan Henricks, Asst. Atty. Gen., Austin, for The Employees Retirement System of Texas.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

POWERS, Justice.

Joyce M. Blount sued the Metropolitan Life Insurance Company and the Employees Retirement System in a district court of Travis County. The trial court rendered judgment that she take nothing by her suit. We will reverse the trial-court judgment and remand the case for trial.

## THE CONTROVERSY

In Blount's original petition, she alleged that her deceased husband, Ronald A. Blount, was killed as the result of an accidental gunshot wound while a member of the Employees Retirement System and an insured under a group life insurance policy issued by Metropolitan. She alleged, in addition, that Metropolitan refused to pay her, as named beneficiary, certain sums the company was obligated to pay her under the group policy. Metropolitan contends that the sums claimed by Mrs. Blount are not owed under the insurance contract because Mr. Blount's death was a suicide.

The controversy between the parties was previously presented to the Employees Retirement System. After an evidentiary hearing, the System found that Mr. Blount's death was a suicide. Based upon that finding of fact, the System, on December 14, 1981, issued an order "that the claim of Joyce Blount for $46,000 of life and accidental death benefits arising from the death of Ronald A. Blount be in all respects denied." Thereafter, Mrs. Blount filed the present suit in a district court of Travis County.

The trial court denied Mrs. Blount's request for a jury and proceeded to determine her cause of action based upon the evidentiary record compiled in the Employees Retirement System. The trial court judgment orders that she take nothing and recites as follows:

> The Court having considered the pleadings on file, the record of the proceedings before the Defendant Employees Retirement System of Texas, and the argument of counsel is of the opinion that the administrative order of the Defendant Employees Retirement System

of Texas is supported by substantial evidence, is lawful, and should be affirmed.

## DISCUSSION AND HOLDINGS

Mrs. Blount brings three points of error: (1) the trial court erred in denying her a trial de novo on her contract claim against Metropolitan; (2) the trial court erred in overruling her request for a jury trial; and (3) the trial court erred in its conclusion that the administrative order of the Employees Retirement System was supported by "substantial evidence."

We hold the case has been tried on the wrong theory and, in the interests of justice, remand the cause to the district court for a new trial. *Jackson v. Hall*, 147 Tex. 245, 214 S.W.2d 458 (1948); *United Gas Corp. v. Shepherd Laundries Co.*, 144 Tex. 164, 189 S.W.2d 485 (1945).

The applicable statute is the Texas Employees Uniform Group Insurance Benefits Act, Tex.Ins.Code Ann. art. 3.50–2 (1981 & Supp.1984) (the "Act" hereafter). The statute establishes a framework for the purchase of group life, accident, and health insurance for State employees. Section 4 of the Act vests in a "trustee" the sole power to administer and implement the Act. The "trustee" so empowered is the State Board of Trustees of the Employees Retirement System of the State of Texas, a body consisting of three appointed members and three members elected by members of the State retirement system. Title 110B, §§ 25.003, 25.004 (Pamph.Supp.1984). This body, as trustee under the Act, is given several powers designated in the Act, including the power to: (1) hire employees and designate their duties; (2) "contract with a qualified, experienced firm of group insurance specialists or an administering firm who shall act for the trustee in a capacity as independent administrators and managers of the programs authorized under" the Act; (3) "enter into interagency contracts with any department of the State of Texas;" (4) "promulgate all rules, regulations, plans, procedures, and orders reasonably necessary to implement and carry

out the purposes and provisions of" the Act; (5) prepare specifications for the insurance coverages authorized by the Act; (6) prescribe the conditions for eligibility for insurance coverages provided under the Act; (7) determine "the methods and procedures of claims administration;" (8) determine "the amount of employee payroll deductions" and the "procedures by which such deductions shall be made;" (9) establish plans of group coverages for active and retired employees, which plans, in the trustee's discretion, may include group life coverage, accidental death and dismemberment, and health benefit plans; (10) formulate and submit to the State Board of Insurance the insurance coverages determined by the trustee; (11) and the power to select particular insurance carriers to furnish such coverages, the selection to follow a competitive-bidding process conducted by the State Board of Insurance. § 3.50–2, §§ 4, 5, 11.

■■■ In addition, § 4(e) of the Act provides that the trustee shall have full power and authority as to the following:

[E]stablishment of grievance procedures by which the trustee shall act as an appeals body for complaints by employees regarding the allowance and payment of claims, eligibility, and other matters.

Nothing in the Act, unless it be this subsection, purports to vest in the trustee a power to adjudicate claims on a group life insurance contract entered into by the trustee under the Act.[1] The parties have as-

---

1. It is a commonplace that the Legislature may delegate to administrative agencies powers that are referred to as "quasi-judicial." The scope and effect of such delegated powers normally vary according to the particular statutory framework wherein the powers are delegated.

For example, the Legislature may *substitute* for common-law rights and duties a wholly different system of statutory rights and duties and authorize an agency, such as the Industrial Accident Board, to determine specific controversies thereunder. *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556 (1916) (aff'd, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527, 1919). More commonly, the Legislature delegates to administrative agencies very general powers to regulate particular businesses, industries, and professions affected with a public interest. *See generally Current Problems—Administrative Government in Texas,* 47 Tex.L.Rev. 805 (1969). Often included in the Legislature's grant of such general regulatory power is a power to decide specific controversies between individuals, or between individuals and the State, arising out of the agencies' regulation. Because considerable private interests, freedoms, privileges, and rights may be adversely affected by the agencies' decisions in such controversies, judicial review of the agencies' decisions is almost routinely provided. *See Schwantz v. Texas Department of Public Safety,* 415 S.W.2d 12, 14–15 (Tex.Civ.App.1967, writ ref'd). Where vested property rights or constitutional rights are adversely affected by the agencies' decisions, there is a constitutional right of judicial review as a matter of due process. *Brazosport Sav. & L. Ass'n. v. American Sav. & L. Ass'n.,* 161 Tex. 543, 342 S.W.2d 747, 750 (1961); *Chemical Bank & Trust Co. v. Falkner,* 369 S.W.2d 427 (Tex.1963). The judicial review provisions of APTRA § 19 ensure that judicial review is available in a proceeding "in which the legal rights, duties, or privileges of a party are ... determined ... after an opportunity for *adjudicative* hearing." APTRA §§ 3(2), 19(a) (emphasis added).

Nevertheless, the scope and extent of the agencies' "quasi-judicial" power of decision is not limited solely by the terms of the statute wherein such power is delegated to the agency. For example, the power of adjudication may not be conferred except under legislative limitations which serve "as a standard or guide for the exercise of ... semi-judicial functions...." *Texas Consol. Theatres v. Pittillo,* 204 S.W.2d 396, 398 (Tex.Civ.App.1947, no writ); *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513, 517 (1921). While the criterion for decisionmaking may be quite general and encompass many factors, *some* criterion must be specified by the Legislature. *Housing Authority v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 87 (1940); *Corzelius v. Harrell,* 143 Tex. 509, 186 S.W.2d 961, 968 (1945).

Certain adjudicatory powers may *not* be delegated to administrative agencies because they ordinarily belong solely to the judicial branch. *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946) (ownership of, or title to, land); *Board of Water Engineers v. McKnight,* 111 Tex. 82, 229 S.W. 301 (1921) (adjudication of vested water rights); *Railroad Commission of Texas v. Rau,* 45 S.W.2d 413 (Tex.Civ.App.1931, writ dism'd) (determination of validity of contract rights).

Where the statute purports to vest in an agency the power to determine an issue that is "inherently judicial in nature," or where the agency is powerless to grant relief and has no authority to make incidental findings essential to relief, the courts retain their jurisdiction of the controversy unless the statute purports to grant the agency an *exclusive* jurisdiction to determine the

sumed that § 4(e) *does* give the trustee a power to adjudicate such claims and the trial court judgment rests upon the assumption that the trustee has such power. If this be a proper construction of § 4(e), then the parties' controversy may, of course, be viewed as a "contested case" as defined in § 3(2) of Tex.Rev.Civ.Stat.Ann. art. 6252–13a, the Texas Administrative Procedure and Texas Register Act (APTRA) (Supp.1984):

> "Contested case" means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for *adjudicative* hearing.

(emphasis added). If, however, the trustee has under the Act no power of adjudication, it follows that the trustee lacked authority to conduct an "adjudicative hearing" and the resulting order issued by the trustee is void.

 We construe § 4(e) of the Act as vesting in the trustee an authority to establish grievance procedures regarding employee complaints about "the allowance and payment of claims, eligibility, and other matters;" and a power to determine and act upon such complaints as *internal, administrative matters only*, short of any power finally to determine the rights and obligations between a beneficiary and a carrier so as to bind them thereto. It is a power to take *informal* discretionary action in a claim dispute between the carrier and a beneficiary, the "lifeblood" of the administrative process, but it is not the power to adjudicate. K.C. Davis, *Administrative Law Text*, § 4.01, (1972).[2] Our construction is based upon the following.

controversy, in which event the constitutionality of the statute must be determined. *Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411 (1961); *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312 (Tex.1968).

**2.** Davis illustrates the relative importance of informal administrative discretionary actions by reference to the actions taken by several federal agencies in one year, showing that the greater number by far were informal as opposed to adjudicatory. Of one agency, the Securities and Exchange Commission, he writes:

> The SEC in all classes of its business had only 103 formal hearings in one recent year, but in one class of business it passed upon 4,706 registration statements to determine whether they complied with standards of adequate and accurate disclosure. When a statement fails to conform, the Commission's staff sends a letter of comment, affording opportunity to file correcting or clarifying amendments. The effective power is exercised through the letters of comment, not through issuance of stop orders. During the year 202 statements were withdrawn and only two stop orders were issued. Whether informal conferences that resolve disputes arising out of letters of comment involve adjudication, consent, or coerced consent seems to be a variable. Informal discretionary action is the meaningful category.

Davis, *supra*, at 89. As suggested in the foregoing, coercive action based upon complaints, without any purported adjudication, is a common method employed by administrative agencies. *Id.* Davis lists the following kinds of action as being informal discretionary actions possible to be taken by an agency: "initiating,

investigating, prosecuting, negotiating, settling, contracting, dealing, advising, threatening, publicizing, concealing, planning, recommending, and supervising." *Id,* at 90.

The distinction between an agency's investigatory power and its power to adjudicate, the latter invoking the safeguards of the federal Administrative Procedure Act, is illustrated in *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). An appendix to the Court's opinion lists the scope of the investigatory power of numerous federal agencies; for example, the Federal Communications Commission "is authorized to investigate any matters contained in a complaint 'in such manner and by such means as it shall deem proper';" the Federal Trade Commission is authorized to investigate "alleged violations of the antitrust Acts;" the National Labor Relations Board is empowered to "investigate petitions and charges submitted to it relating to union representation and unfair labor practices;" the Department of Agriculture is empowered to "investigate any complaint filed with the Secretary alleging that someone has violated the" Agricultural Commodities Act of 1930; the United States Tariff Commission may "investigate any complaint alleging that a person has engaged in unfair methods of competition or unfair acts in the importation of articles into the United States;" and so forth. *Id.* at 454–486, 80 S.Ct. at 1521–1542.

Analogous provisions are found in Texas statutes. For example, the Texas Railroad Commission is empowered "to determine complaints presented to it by" motor carriers, by public officials, or by any citizen having an interest in the subject matter. Tex.Rev.Civ.Stat.Ann. art. 911b, § 14(a) (1964). "Any affected person may

■ "The cardinal rule in statutory interpretation and construction is to seek out the legislative intent from a general view of the enactment as a whole, and, once the intent has been ascertained, to construe the statute so as to give effect to the purpose of the Legislature." *Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344, 348 (Tex.1979). When one takes a general view of the Act, one finds that it does not concern the State's exercise of its *police power* to effectuate the public health, safety, comfort, and convenience. For example, the Act does not concern the State's power as a lawmaker to regulate or license in an entire industry, profession, trade or business. Instead, by its very terms and title, the Act plainly concerns a different power inherent in the State's sovereignty—its power *as an employer*, issuing from its general power to contract. It is within *this* context that § 4(e) must be interpreted to determine whether the trustee is therein given a power to adjudicate claims arising out of an insurance contract entered into by the trustee under the Act.

While no part of the Act purports expressly to give the trustee the power to adjudicate between a beneficiary and a carrier on any claim dispute between them, we find that the Act *does* give the trustee a power to adjudicate between the State and any employee, annuitant, or dependent in the matter of *fraudulent* claims. Section 13A(a) provides that the trustee may, after notice and hearing, "expel from participation in the Texas employees uniform group insurance program any employee, annuitant, or dependent who submits a fraudulent claim under or has defrauded or attempted to defraud any health benefits plan offered under the program." Subsections 13A(c) and (e) specifically provide that such proceedings constitute a "contested case" under APTRA and that an appeal therefrom "is under the substantial evidence rule." Nothing in this section of the Act purports to empower the trustee to make a fraudulent-claim determination as between the carrier and a beneficiary, so that it would be a binding determination between those parties, precluding any obligation of payment on the carrier's insurance contract.

Section 13A is, however, useful for interpretative purposes because it illustrates vividly that the Legislature, had it intended to vest in the trustee an adjudicative power reviewable as a "contested case" and under the "substantial evidence rule," would have chosen language more direct and suitable for the purpose. More importantly, by the Legislature's *express* provision that APTRA *shall* apply to a narrow class of contract claims, that is, fraudulent claims, and to the trustee's decision to expel a member from participation in the relevant group-insurance program, the Legislature *impliedly* provided that all other classes of insurance claims shall *not* constitute a matter to which APTRA applies. *State v. Mauritz-Wells Co.*, 141 Tex. 634, 175 S.W.2d 238, 241 (1943). Thus, within the terms of the

complain" to the Public Utilities Commission or the Texas Railroad Commission concerning "any act or thing done or omitted to be done by any public utility in violation or claimed violation of any law which the regulatory authority has jurisdiction to administer, or of any order, ordinance, rule, or regulation of the regulatory authority." Tex.Rev.Civ.Stat.Ann. art. 1446c § 83(a) (Supp.1984). The Texas Railroad Commission "shall ... hear and determine complaints" relative to oil and gas matters. Tex. Nat.Res.Code Ann. § 81.053(2) (1978). The Department of Agriculture may investigate any complaints relative to the storing, shipping, and handling of grain. Tex.Agri.Code Ann., § 14.-003(a)(1).
Therefore, when § 4(e) of the Insurance Code provides that the trustee "shall act as an appeals body for complaints by [insured] employees regarding the allowance and payment of claims," without specifying that the trustee's decision shall have a particular effect upon anyone's legal rights, duties, or privileges, the only inference one may logically draw is that the Legislature intended that the decision have no effect upon such rights, duties, and privileges. The rather plain purpose of § 4(e) is to empower the trustee to collect and consider such complaints for future reference in formulating and contracting for the coverages authorized by the Act and to allow the trustee to utilize his good offices and persuasive powers in any dispute between the carrier and an employee, or perhaps, a beneficiary, although § 4(e) does not mention beneficiaries.

Act itself, it is doubtful that one can impute to the Legislature an intent to empower the trustee to adjudicate between a claimant and a carrier concerning their rights and obligations on an insurance contract made by the trustee under the Act.

Next, a general view of the Act compels in another way an inference that the Legislature did not vest in the trustee a power to adjudicate disputes arising between a beneficiary and a carrier as to liability on an insurance contract made under the Act. One observes that the Act is silent as to the rights and duties of insureds, annuitants, and beneficiaries, on the one hand, and carriers on the other hand. Implicit in the Act is that their rights and duties *inter se* are matters of contract—the contract made by the trustee with the carrier in which the State employee is an insured. But the Act gives absolutely no criterion by which the trustee is to determine any claim on the contract or any defense based thereon. The absence of any such criterion, which could be quite general, suggests strongly that the Legislature did not intend that the trustee should have an adjudicatory power in such disputes. *Housing Authority v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79 (1940). Moreover, because the rights and obligations of the parties are left to contract, it is strongly implied that the enforcement of such rights and obligations is a matter of contract law enforceable through common law causes of actions based upon contract.

Article I, § 13 of the Constitution of the State of Texas (1955) ensures that one may not be unreasonably denied access to the courts for adjudication of his common-law cause of action. *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 954 (1955). That provision prohibits legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well-established at common law, such as an action on or for breach of an insurance contract. The Legislature may, of course, as it did in its enactment of the Workers' Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 8306, et seq., (1967 & Supp.1984) avoid such arbitrariness and a transgression of the constitutional provision by providing a *reasonable substitute* for the legal rights and duties prescribed by the common law and actions provided by that body of law. *Lebohm v. City of Galveston, supra,* 275 S.W.2d at 954; *see Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556 (1916) (aff'd, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527, 1919); *Waites v. Sondock,* 561 S.W.2d 772 (Tex.1977). And it is conceded that where the Legislature creates a right and duty not known to the common law, it may place in an administrative agency the power to determine the right and duty in a particular controversy. *See, e.g.,* Tex.Rev.Civ.Stat.Ann. art. 1446c, the Public Utility Regulatory Act, §§ 16, 18, 24, 26, 27 (Supp.1984); see also the statutes discussed in *Current Problems—Administrative Government in Texas,* 47 Tex.L. Rev. 805 (1969). The Act does not, however, purport to *create* any right or duty; rather, those matters are expressly left to be fixed contractually, from time to time, between the carrier and the trustee. In short, the Act does not even hint at establishing a statutory right or a system of statutory rights and duties as a substitute for common-law rights and duties.

Finally, the assumptions necessary to a theory that the trustee has adjudicative powers, in the case of ordinary contract actions and defenses, are insupportable. While the Act itself does not provide for judicial review in the ordinary case, we may assume the correctness of the carrier's position that judicial review is available under APTRA § 19. But if so, how is a reviewing court to apply the standards for review under APTRA § 19 when it does not know whether the *manner* of review is by trial de novo or under the substantial evidence rule? The Act specifies neither and a reviewing court cannot know whether "the manner of review authorized by law" is one or the other. APTRA § 19(c),(d). Indeed, the Act does not provide for judicial review at all in the matter of ordinary contract actions and defenses. Nor does the reviewing court know the

*scope* of review or the *applicable standards* for judicial review. APTRA § 19(e).

In light of the foregoing, it would, in our view, contravene legislative intent to hold that § 4(e) of the Act impliedly vests in the trustee an adjudicatory power over ordinary contract claims based upon a denial of coverage.[3]

■ We hold, accordingly, that the trial court proceeded on the wrong theory in its adjudication of Mrs. Blount's claim under the substantial evidence rule and as a contested case defined by APTRA § 3(2). In the interests of justice, we reverse the judgment of the trial court and remand the cause for a new trial as an ordinary common-law action on or for breach of the insurance contract.

3. *See, Wilson v. State,* 582 S.W.2d 484 (Tex.Civ. App.1979, no writ) (local grievance committee of State bar does not decide "contested cases" under APTRA because it may only dismiss a complaint or make a final determination with consent of the attorney against whom complaint is made); *Hardin v. Texas Bd. of Pardons & Paroles,* 554 S.W.2d 18 (Tex.Civ.App.1977, no writ) (APTRA does not confer upon district court authority to review recommendations of Texas Board of Pardons and Paroles, and there is no "contested case" under APTRA, because Board's action is not a final determination of prisoners' rights in the matter of paroles, that being a power reserved to the Governor under Tex.Code Crim. P. Ann. art. 42.12, § 22) (Supp. 1984).

There is a question, not yet definitely settled insofar as our research reveals, whether APTRA itself creates a right to "an adjudicative hearing" before an administrative agency. The question was squarely presented in *Big D Bamboo, Inc. v. State,* 567 S.W.2d 915 (Tex.Civ.App.1978, no writ). In a split decision, the court held that APTRA did *not* itself give the holder of a permit a right to a hearing relative to the amount of gross receipt taxes owed by him. The stated basis for the holding, as in the case we now decide, is that the Commission's determination of the amount is "not a final determinative or binding order or decree with reference to such deficiency or liability" under the pertinent statute. *Id.* at 918. The dissent rests upon a theory that the model act from which APTRA was derived defined "contested case" as "[a] proceeding ... in which the legal rights, duties, or privileges of a party are *required by law* to be determined by an agency after an opportunity for hearing;" and when APTRA omits the phrase "required by law" and adds the modifier

## ON MOTIONS FOR REHEARING

The Employees Retirement System and Metropolitan, by motions for rehearing, challenge in various ways our refusal to hold that § 4(e) of the Act impliedly vests in the trustee a power to adjudicate claims based upon a denial of coverage. Some of their contentions suggest the need for a reply.

The Employees Retirement System and Metropolitan apparently agree that a power of adjudication exists in the trustee only if that be the meaning assigned to § 4(e), wherein the Legislature confers upon the trustee full power and authority as to the

establishment of grievance procedures by which the trustee shall act as an appeals body for complaints by employ-

"adjudicative" to the word "hearing," this illustrates a legislative intention to "expand 'contested cases' beyond those situations in which agencies were required by statute to determine legal rights, duties, or privileges, and to include all instances in which agencies in fact determine legal rights, duties, or privileges of parties even though no hearing was required by statute. McCalla, The Administrative Procedure and Texas Register Act, 28 *Baylor L. Rev.* 445, 448 (1976)." *Id.* at 919. The dissent's theory is a "strained construction [that] invites potentially serious consequences by ushering an unknown and indeterminate number of agency proceedings into the contested case category," in some of "which the formalized procedures of the APTRA would simply be impractical...." Hamilton & Jewitt, *The Administrative Procedure and Texas Register Act: Contested Cases and Judicial Review,* 54 Tex.L.Rev. 285, 289 (1976). The writers of this article prefer, for several reasons, a construction of the term "contested cases" that would, in effect, read back into the definition the phrase "required by law"—some *other* statute or constitutional law must determine that an "adjudicative hearing" is required in the circumstances. The reasons given by the writers are based upon the language employed in the APTRA definition of "contested case," but also upon the likelihood that a contrary interpretation would impose the formal procedures of APTRA upon many administrative proceedings that can only function informally. "In the authors' view, it is desirable to construe ambiguous language so as to minimize potential problems." *Id.* at 292. This would seem the better view, but we are content to rest our decision in the present case upon a holding that the trustee simply had no jurisdiction to make a binding determination relative to the contract rights of the parties.

574

ees regarding the allowance and payment of claims, eligibility, and other matters ....

Apparently, they do not challenge the proposition that nothing in the Act purports *expressly* to confer upon the trustee a general power of adjudication with respect to ordinary policy claims. Does § 4(e) *imply* a general power of adjudication in that regard?

■■■ It is said that we overlook or deemphasize certain key phrases in § 4(e), specifically the term "appeals body" and the phrase "the allowance and payment of claims ...." It is argued that these phrases *clearly* imply a power of adjudication, which is the meaning that has been assigned to them by the trustee—an administrative construction entitled to our consideration. *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex.1974). We have not overlooked or deemphasized the quoted phrases.

The grammatical answer to appellees' contentions is that § 4(e), and the phrases in question, are facially limited in their scope and meaning by the threshold phrase "establishment of grievance procedures." *Nothing* in this phrase suggests a judicial proceeding and the following words—"appeals body for complaints by employees regarding the allowance and payment of claims"—must be interpreted in light of that antecedent, modifying, and limiting phrase. Aside from this, however, appellees' theory contradicts certain fundamental rules of statutory construction relative to the legislative delegation of powers to administrative agencies.

■■■ It is a general principle of administrative law that an administrative agency has no inherent power. An agency's jurisdiction and the nature and extent of its powers must be found within the constitutional and statutory provisions applicable to the agency. It has been said that an agency may exercise only such authority as is conferred upon it by statute in "unmistakable terms." *Board of Insurance Com'rs v. Guardian Life Ins. Co.*, 142 Tex. 630, 180 S.W.2d 906 (1944). While every administrative body must determine

for itself whether it has jurisdiction of a matter, its decision does not amount to a judicial adjudication of the existence and extent of its authority; and if an agency indeed has no jurisdiction over the subject matter, any order made in that matter is void. *Security State Bank v. State*, 169 S.W.2d 554 (Tex.Civ.App.1943, writ ref'd w.o.m.). *See also Key Western Life Ins. Co. v. State Board of Ins.*, 163 Tex. 11, 350 S.W.2d 839 (1961).

The issue before us is whether one may reasonably interpret § 4(e) of the Act to be a grant of power to the trustee to find facts and apply common-law rules in making an "adjudication" of a beneficiary's claim under the policy, that is, a determination that is binding on the beneficiary and the insurer as the judgment of a court would be. We do not believe that is the sense of the words used in § 4(e); they are not in our view reasonably susceptible of that interpretation. This is the primary basis for our decision. We have absolutely no doubt that a court, motivated by honest convictions of policy (judicial economy, for example), could exercise its raw judicial power and simply declare that the words of § 4(e) *do* "unmistakably" and "clearly" imply a grant of general or special adjudicatory power to the trustee, whether that be the ordinary sense of § 4(e) or not. We do not believe that to be the proper function of a court, however, and we will not do it.

We prefer the more rational and traditional interpretative process illustrated in *Stauffer v. City of San Antonio*, 162 Tex. 13, 344 S.W.2d 158 (1961) wherein the Court assigned meaning to Tex.Rev.Civ. Stat.Ann. art. 1269m, § 22a (1963) (amended by 1979 Tex.Gen.Laws, ch. 753, § 9 at 1864). That statute provided that a city fireman may be given military leave of absence without pay; and upon his return from military service he

shall be entitled to be returned to the position in the department held by him at the time the leave of absence is granted ... provided he ... remains physically and mentally fit to discharge the duties of that position. ...

Stauffer, a fireman granted military leave, applied on his return for a position in the fire department of the City of San Antonio. He was denied re-employment on the basis that he was not physically qualified, as indicated in his medical discharge from military service and as found by the City's examining physician, upon which evidence the City's Civil Service Commission acted in denying Stauffer re-employment.

The City, on writ of error, argued three points of error attacking the trial court's judgment that Stauffer be reinstated:

(1) Section 9 of Article 1269m makes the Chief of the Fire Department the sole judge of whether petitioner is physically qualified to discharge the duties of his position; (2) the courts have no power to review the action of the Commission in refusing reinstatement; and (3) the decision of the Commission on the question of petitioner's physical fitness is supported by substantial evidence.

344 S.W.2d at 159. The Supreme Court answered these contentions with an analysis of the applicable statute along the same lines we have set forth above. The Court stated:

Section 22a states in no uncertain terms that a returning fireman *shall* be reinstated if he remains physically and mentally fit to discharge the duties of his position.... *It does not provide for reinstatement upon a finding by the Commission that the applicant is qualified, and there is no language suggesting that the Commission is to hear and decide that question.* The statute does not even disclose where the application for reinstatement is to be filed. An intention that the same should be presented to the Commission can fairly be implied from the provision authorizing that body to grant military leave of absence, *but this affords no basis for a further implication that the Commission is authorized to conduct a hearing and make an administrative determination of the fact questions that may arise.*

Article 1269m contains no general grant of power to hear and decide disputed issues.

*Id.* 344 S.W.2d at 160 (emphasis added). After analyzing other sections of art. 1269m, the Court quoted at length from the decision in *French v. Cook,* 173 Cal. 126, 160 P. 411, 413 (1916), indicating the Court's obvious approval of the California court's analysis of a provision, in a city charter, requiring the grant of a pension to a policeman killed or injured in the performance of his duty:

There is absolutely nothing in the charter purporting to confide to the [pension] board the power to finally determine any question of fact in connection with such a pension. The board is apparently in the same position with relation to such a matter as is any officer required by law to do a prescribed act in a certain contingency, where no special method is provided by law for the ascertainment of the facts. Under such circumstances it may often be true that there is uncertainty or dispute as to the facts, but in such a case the only resort of the officer is such investigations as he may be able to himself make *for the purpose of determining his own course of action. His determination as to the facts, however, is not effectual for any other purpose.* If not satisfied as to the evidence of the essential facts, he may refuse to act until required to do so by the judgment of some tribunal invested with the power to finally determine such controversy, *but before such tribunal any conclusion to which he may have come on the facts has no legal force whatever.* The sole question there is whether the facts are in reality such as to require the performance of the act, and this altogether regardless of the officer's conclusion as to the facts. The party having a vested right in the performance of the act, if the facts are as claimed by him, *has also the right to have his claim as to the facts judicially determined.* The functions of the board in such a matter as this are really ministerial only, and come under the same principle as would apply in the

case of a county or city auditor, in so far as any finality to its conclusions are [sic] concerned.

344 S.W.2d at 160 (emphasis added). The Supreme Court of Texas then concluded its opinion in *Stauffer* by stating:

Section 22a gives petitioner a legal right to reinstatement if he is physically and mentally fit to discharge the duties of his position. Since the power to hear and determine that question in a judicial sense is not conferred by law upon some other tribunal, the district court has jurisdiction to decide the same *from a preponderance of the evidence.* Texas Constitution, Article V, Section 8.

*Id.* 344 S.W.2d at 161 (emphasis added). The parallels with the present case are obvious and require no elaboration.

In the meaning we have assigned to § 4(e), we have suggested the limits of the power conferred by that section upon the trustee. The words of that section, standing alone and considered in light of the entirety of the Act, do not suggest that the trustee has in any sense the power finally to determine the question of coverage, depending upon his fact finding as to the issue of suicide, so that his decision will be binding on the parties as a judgment would be or as an administrative decision would be, subject to "substantial evidence" review under APTRA. *Hence, Mrs. Blount was entitled to have the issue determined by a judicial tribunal, which does have that power, based upon a preponderance of the evidence, and not upon the basis of "substantial evidence" shown in an administrative record.*

■ Some other suggestions made in the motions for rehearing deserve comment. We point out that the "scope of review" and the "manner of review" under APTRA § 19 are not the same thing, although they may be intertwined, a point upon which one of the motions for rehearing is mistaken. For example, the "scope of review" may be the "substantial evidence" review based upon an agency record in a case where the "manner of review" prescribed by statute is "other than trial de novo."

Our reference to the absence of statutory standards applicable to the trustee's presumed decision-making power under § 4(e) should not be misunderstood. Our reference to the absence of such standards is intended to demonstrate the improbability that the legislature intended to grant to the trustee an adjudication power. We have conceded that the standards may be quite general. *See, e.g., Southwestern Sav. & L. Ass'n. of Houston v. Falkner,* 160 Tex. 417, 331 S.W.2d 917 (1960). In the statute under review, however, there are no standards at all.

■ Next, we have no doubt of the trustee's rule-making power; however, he may not, through an exercise of that power, enlarge his jurisdiction beyond that granted by the Legislature.

■ Finally, with respect to the difficulties envisioned from a circumstance where the trustee does not have the power of adjudication, we emphasize that we must declare and enforce the statutes as they are made by the Legislature and it is for that body, and not the courts, to give relief if the legislation proves unwise. *Board of Insurance Com'rs v. Guardian Life Ins. Co., supra.* We will not, however, prejudge the constitutionality of any such future statute.

The motions for rehearing are overruled.