**COUNCIL OF CO–OWNERS OF SAIDA
II TOWERS CONDOMINIUM
ASSOCIATION, et al., Appellants,**

v.

**TEXAS CATASTROPHE PROPERTY
INSURANCE ASSOCIATION, et
al., Appellees.**

**No. 13970.**

Court of Appeals of Texas,
Austin.

May 29, 1985.

Rehearing Denied Aug. 28, 1985.

Guy C. Fisher, Austin, for appellant.

David C. Duggins, Clark, Thomas, Winters & Shapiro, Austin, for Texas Catastrophe Property Ins. Ass'n.

Jim Mattox, Atty. Gen., Margaret S. McGloin, Asst. Atty. Gen., Austin, for State Bd. of Ins.

SHANNON, C.J., and POWERS and BRADY, JJ.

### ON MOTION FOR REHEARING

POWERS, Justice.

Our previous opinion is withdrawn and the following is substituted.

In four separate suits, numerous property owners sued the Texas Catastrophe Property Insurance Association in a district court of Travis County, Texas, alleging causes of action on property-insurance contracts written by the association.[1] The as-sociation appeared in each case by answer containing a general denial and a plea that the district court lacked subject-matter jurisdiction of the causes of action pleaded by the property owners. After hearing, the district court sustained the association's plea to the jurisdiction, dismissing the four suits. The suits were, by agreement, consolidated for purposes of the present appeal. We will hold the trial court had jurisdiction of the pleaded causes of action; and, consequently, that it erred in dismissing the suits. We will therefore reverse the judgments below and remand the causes for trial.

The fundamental and determinative issue on appeal is whether the Legislature, in its enactment of the Catastrophe Property Insurance Pool Act (the "Act"),[2] intended to abolish the *common-law* cause of action and remedy pleaded by the plaintiffs for breach of their insurance contracts, and to substitute therefor an exclusive and mandatory *administrative* course of adjudication and remedy in the State Board of Insurance. *If* the Legislature so intended, then the district court lacked subject-matter jurisdiction and properly dismissed the plaintiffs' suits, for they averred such a common-law cause of action and prayed for a common-law remedy of compensatory damages. On the other hand, if the Legislature *did not* so intend, then the plaintiffs' pleaded cause of action and remedy fell within the general original jurisdiction of the district court, a jurisdiction conferred

---

1. The plaintiffs are: (1) Council of Co-Owners of SAIDA II Towers Condominium Association, (2) Council of Co-Owners of SAIDA Towers I Condominium Association, and (3) Council of Co-Owners of Sea Island Towers Condominium Association, each of which is an unincorporated association of persons; and (4) Glenn McGehee, d/b/a Ocean Palm Center and Ocean Palm International, Inc.

One of the defendants in the suits is the Texas Catastrophe Property Insurance Association, an entity created by the provisions of the Catastrophe Property Insurance Pool Act, Tex.Ins.Code Ann. art. 21.49 (1981 & Supp.1984). The other defendant is the State Board of Insurance, an agency charged by the statute with the administration of its provisions.

The members of the Texas Catastrophe Property Insurance Association are insurers authorized to write property insurance in the State. As discussed in the text of the opinion, membership is compulsory as a general rule. The general statutory scheme is one of providing for the assignment of undesirable risks among all the members, on terms stated in the statute, so that the insurance may be obtained by property owners when they could not otherwise do so. Similar schemes are set up, for similar purposes, in other statutes. *See, e.g.,* Tex.Rev.Civ. Stat.Ann. art. 6701h (1977 & Supp.1985) (assigned-risk plan for motor vehicle liability insurance); Tex.Ins.Code Ann. art. 5.76 (1981) (The Texas Workers' Compensation Assigned Risk Pool).

2. Tex.Ins.Code Ann., *supra.*

upon the court by the terms of Tex. Const. Ann. art. V, § 8 (Supp.1985), and it was reversible error to dismiss the plaintiffs' suits. *See also* Tex.Rev.Civ.Stat.Ann. art. 1906 (1964).

## THE CATASTROPHE PROPERTY INSURANCE POOL ACT

The general purpose of the Act is to effectuate the writing of windstorm, hail, and fire insurance in certain portions of the State where property owners would otherwise, as a practical matter, be unable to secure such insurance, owing to the location of their property in areas prone to such hazards and a resulting reluctance in insurers to contract with them for insurance protection (§ 1). In its substantive parts, the Act creates a legal entity named the "Texas Catastrophe Property Insurance Association," a defendant below. The members of the association constitute a "pool" to which "all property insurers authorized to transact property insurance in the State" shall belong, except as they are excused by other provisions of law (§ 4). The association is empowered by the Act to write contracts of insurance in its own name and may appear before the State Board of Insurance in regard to such material matters as premium rates, risk classifications, rules, rating plans, and changes therein (§§ 5(a), 8). The profits and losses on the association's insurance contracts are apportioned pro-rata among the members of the pool according to a prescribed formula (§ 5(c)). Members of the pool may themselves voluntarily write similar insurance in the hazard-prone areas and thereby reduce their participation in the writings of the association (*Id.*). The business of the association is governed by a board of directors, selected by the members, under a plan formulated by the board to provide more particularly for the assessment and recoupment of losses (§ 5(b)). The Act empowers the State Board of Insurance to "issue any orders which it considers necessary to carry out the purposes of this Act," including rate orders and orders establishing the forms of policies issuable by the association in evidence of the terms of its contracts with property owners to whom the insurance protection is sold (§ 5A(a)).

The theme of the statute is that the association shall conduct its business as any ordinary insurer having the power to enter into insurance contracts in the State at premium rates and on policy forms established by the State Board of Insurance. We conclude, in consequence, that the association is empowered, like any insurer under the common law, to deny coverage on an owner's claim. Even though that power is not expressly given the association by the terms of the Act, it is clearly implied. (It is alleged by the plaintiffs that the association denied coverage under its contracts with the plaintiffs, in breach thereof, entitling them to compensatory damages for the breach.)

Section 9 of the Act is entitled "Appeals." It is primarily from the terms of this section that one may arguably be permitted an inference that the Legislature intended that the State Board of Insurance would adjudicate an insured's claim on an insurance contract written by the association, even though the Act is *absolutely silent* as to such essential matters as: (1) the criteria or standards by which the Board's adjudication shall be made; (2) the factual determinations upon which any legal criteria or standards shall depend; and (3) any remedy awardable by the Board if it be determined that the association is liable on or for breach of its insurance contract.

Section 9 does provide for both administrative review and judicial review of controversies; however, the nature of the reviewable controversies is not specified beyond what may be implied by the rather inexact word "aggrieved." The Board's power of *administrative* review extends to "appeals" taken to the Board by an *insured* or an *insurer* "aggrieved by an act, ruling or decision of the Association," or by the *association* in the event it is "aggrieved" by any action *of the Board.* With respect to *judicial* review, the section provides that the association or a person "aggrieved" by an order or decision of the Board may

"appeal" to a Travis County district court, *"and not elsewhere, in accordance with Article 1.04(f) of the Insurance Code of Texas"* (emphasis added). That is to say, exclusive venue in the case of an "appeal" to a district court lies in Travis County, Texas, and the appeals are governed by art. 1.04(f) of the Insurance Code.

## THE ASSOCIATION'S THEORY THAT THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION

The association's theory that the district court was without jurisdiction over the plaintiffs' causes of action is this: in any suit brought under authority of § 9 of the Act, the State Board of Insurance must be named a defendant, for that is the express requirement of article 1.04(f) of the Insurance Code; and the suit must be brought within 30 days of the date the Board's decision in the case becomes final and appealable, for that is the express requirement of § 19(b) of the Administrative Procedure and Texas Register Act,[3] applicable to contested cases adjudicated by the Board. *We observe here that the theory rests upon a disputed premise—that the causes of action pleaded by the plaintiffs were, by the Act, committed to the State Board of Insurance for adjudication in the first instance.*

In the present case, the plaintiffs sued the association in a district court of Travis County within 30 days of the Board's final decision. They alleged that the association had wrongfully refused to pay the owners' claims for property losses resulting from a hurricane, which losses they alleged were compensable under the insurance contracts. Their petition *also* averred that the plaintiffs requested "a trial de novo review of a decision of the State Board of Insurance," which decision had validated the association's denial of the plaintiffs' claims. The plaintiffs' original petition did not, however, designate the Board as a defendant nor did they request issuance and service of citation upon the Board. The record reflects that the plaintiffs, by their first amended original petition, eventually *did* join the Board as a defendant, but this pleading was filed *after* the 30-day period stated in APTRA § 19(b).

From the foregoing circumstances the association contends that the district court's potential jurisdiction under § 9 of the Act was never invoked, until too late, by a pleading filed in compliance with the conditions imposed by the other two statutes.[4] The association's theory thus reduces to a contention that these various statutory conditions constituted "jurisdictional" elements of the statutory cause of action authorized by § 9 of the Act. But we regard this issue as incidental,[5] for we

---

3. Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp. 1985) ("APTRA").

4. At the time of contracting with the plaintiffs, the association had a different idea about the applicability of the 30-day requirement of APTRA § 19(b), as did the Board in approving the form of contract or "policy." Under the heading, "Basic Conditions," the policy form approved by the Board, issued by the association, and now sued upon by the plaintiffs, provides as follows:

   No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements *of this policy* shall have been complied with, and unless commenced *within two years and one day* next after cause of action accrues.

   (Emphasis added). Nothing in the policy suggests the necessity of initial adjudication by the Board and, of course, the two-year contractual period impliedly excludes the 30-day provision

of APTRA § 19(b), the term "cause of action" having plain reference to the accrual of a cause of action on the contract, as on any other contract. And even though dealing with the matter of suits on the policy, it nowhere indicates that such suits must be brought in Travis County, "and not elsewhere," in the words of art. 1.04(f) of the Insurance Code.

5. We reject the association's contention that naming the Board as a defendant was a "jurisdictional element of the plaintiffs' causes of action," even if they were "purely statutory." While *Mingus v. Wadley, infra,* requires compliance with all statutory requirements, when they are mandatory and exclusive, and the cause of action is "purely statutory," this test is literally satisfied when the trial court has jurisdiction of the subject matter of the plaintiff's suit, under his allegations, and the only unmet requirement is that he join another party defendant. The rationale is, of course, that after the filing of the "purely statutory" cause of action, the "ordinary

will hold that the State Board of Insurance had no jurisdiction to adjudicate the plaintiffs' common-law causes of action on their insurance contracts with the association; that any action of the Board purporting to adjudicate those claims in a way legally binding upon the parties was void; and that the provisions of § 9 of the Act (and therefore the two other statutes referred to above) were not applicable at all to such common-law causes of action.

## DISCUSSION AND HOLDINGS

■■■ We start with the constitutional rule that one may not unreasonably be denied access to the courts for adjudication of his common-law cause of action. Tex. Const.Ann. art. I, § 13 (1984); *Lebohm v. City of Galveston*, 154 Tex. 192, 275 S.W.2d 951, 954 (1955). That constitutional provision prohibits the Legislature's *arbitrary* withdrawal of all legal remedies from one having a cause of action well-established at common law, as in a suit for breach of contract. The Legislature may, as it did in its enactment of the Workers' Compensation Act, avoid arbitrariness and a consequent transgression of the Constitution by providing a *reasonable substitute*

for the legal rights and duties prescribed by the common law, and attendant common-law remedies, which it may abolish.[6] *Id.* at 954. *See Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916), aff'd, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1918); *Waites v. Sondock*, 561 S.W.2d 772 (Tex.1977); *Sax v. Votteler*, 648 S.W.2d 661 (Tex.1983); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984); *Blount v. Metropolitan Life Ins. Co.*, 677 S.W.2d 565 (Tex.App.1984, writ pending). But the Legislature also possesses the power to *create* causes of action and remedies *unknown* in the common law, such as in a statutory cause of action for judicial review of quasi-judicial determinations made by an administrative agency in its exercise of regulatory power—a power that may impinge upon and create controversies between the State and an individual, or between individuals alone, relative to the agency's administration of regulatory responsibilities. Indeed, the Legislature almost routinely creates and authorizes a cause of action for the judicial review of such controversies on appeal to a Travis County district court, and not elsewhere.[7] *See generally*

---

rules of practice" apply to permit such joinder, when the review is by trial de novo, and the omission of a necessary defendant is not a "jurisdictional" defect depriving the court of subject-matter jurisdiction. *Jago v. Indemnity Insurance Co. of North America*, 120 Tex. 204, 36 S.W.2d 980, 982 (Tex.1931); *Lancaster v. Lancaster*, 277 S.W.2d 824, 826 (Tex.Civ.App.1955), aff'd, 291 S.W.2d 303 (Tex.1956); *Indemnity Insurance Co. of North America v. Carrell*, 318 S.W.2d 744, 748–49 (Tex.Civ.App.1958, writ ref'd n.r.e.). Further, even if the 30-day period of APTRA, § 19(b) were to be regarded as a statute of limitations, the timely filing of the petition against the association, the only party against whom the appellants could obtain relief by their de novo appeal, would have tolled the running of limitations for purposes of correcting a defect of parties. *See Ealey v. Insurance Co. of North America*, 660 S.W.2d 50 (Tex.1983).

6. When the Legislature *does* create a cause of action and remedy for its enforcement, these are regarded as merely cumulative of the common-law cause of action and remedy, unless the statute negatives the latter. *Juneman v. Franklin*, 57 Tex. 411, 3 S.W. 562 (1887). Repeal of the common-law action and remedy by implica-

tion is not favored, and requires a clear repugnance between the right of action and remedy created by statute as against those existing at common law. *Thouvenin v. Rodrigues*, 24 Tex. 468 (1859). *See also Hamilton County v. Garrett*, 62 Tex. 602 (1884).

7. Because such statutory causes of action for judicial review *are* so routinely authorized in reference to the decisions of administrative agencies, it is perhaps too easy to *assume* that *all* controversies between individuals, when they have an administrative *aspect*, fall within the scope of administrative determination and judicial review in such a statutory cause of action. The Supreme Court of Texas has rejected the assumption repeatedly. *See, e.g., Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411 (Tex.1961) (whether sand-fracturing operation would constitute common-law trespass to injury of adjoining landowner was subject to judicial determination in first instance, even though regulatory aspects thereof lay within the jurisdiction of Texas Railroad Commission); *Foree v. Crown Central Petroleum Corp., supra* (plaintiffs' suit for unjust discrimination by common carriers of crude oil determinable in district court even without an administrative

*Schwantz v. Texas Department of Public Safety,* 415 S.W.2d 12, 14–15 (Tex.Civ.App. 1967, writ ref'd) and *Current Problems— Administrative Government in Texas,* 47 Tex.L.Rev. 805 (1969), where many of these statutory causes of action are listed or discussed.

■ Whether the new statutory rights and obligations are (1) unknown in the common law or (2) reasonable substitutes for common-law rights and obligations that are abolished by the Legislature, that body may establish a statutory right of action and remedy to enforce the new rights and obligations. Then it may be said:

> [t]he rights to be enforced, and all the remedies provided therefor, are *purely statutory,* as distinguished from the common-law rights and remedies....

(Emphasis added). *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926). If such be the case, then the following rule is applicable:

> The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable.

*Id.* Thus, in the present case, *if* the rights and obligations declared upon in the plaintiffs' petition, and the remedy requested by them, be "purely statutory," then it may be supposed that they were required to comply with the statutory requirements that they designate the State Board of Insur-

ance as a defendant within the 30 days allowed, and when they failed in that regard, their suits were properly subject to dismissal by the district court. But such is not the case.

The contracts declared upon by the plaintiffs are in the form of an ordinary insurance contract such as the Board approves in other areas of insurance. The material rights, obligations and remedies of necessity derive from the contract terms and not from any statute. Nothing in the Act purports to provide a system of rights, duties and remedies as a substitute for the rights, duties and remedies imputed by the common law to the contracts authorized therein. Nothing in the Act purports to abolish these common-law rights, duties and remedies. The *silence* of the Act, in this respect, literally leaves the parties to whatever rights, duties and remedies exist at common law under their contracts.

Moreover, nothing in the Act suggests a power in the Board to adjudicate these common-law rights and duties, or award a common-law remedy for their enforcement, unless these traditionally judicial functions are assigned to the Board by implication from the word "aggrieved," as used in § 9 of the Act. But such implications are *forbidden,* for the Board possesses no inherent power, but only the powers *expressly* conferred upon it "in unmistakable terms." *Key Western Life Ins. Co. v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839, 848 (1961); *Board of Insurance Com'rs v. Guardian Life Ins. Co.,* 142 Tex. 630, 180

---

determination of discrimination by the Texas Railroad Commission, the agency being without statutory authority to award damages for such discrimination and without statutory authority to make specific incidental findings as condition to the judicial award of money damages, notwithstanding that the Commission *was* empowered by statute to hold hearings and make findings of discrimination *for administrative purposes* ). *See also Railroad Commission of Texas v. Rau,* 45 S.W.2d 413 (Tex.Civ.App.1932, writ dism'd), where the court stated in reference to a contract purporting to assign a motor-bus route approved by the Commission:

> Appellee contends that the railroad commission was without power to determine the validity of the contract between Rau and Joe

Amberson. This contention we think is correct. The powers granted and duties conferred upon the railroad commission by the act in question are very ample as regards the granting of certificates of convenience and necessity, and the regulation of those engaged in the traffic. *We find nothing in the act, however, which attempts to confer any power upon the commission to adjudicate the contractual rights of individuals. This is aside from any constitutional question which might be involved if such power were attempted to be conferred.*

*Id.* at 416 (emphasis added). The same may be said of the Act and the powers it confers, and does not confer, upon the State Board of Insurance.

S.W.2d 906, 908 (1944). And even the implication is embarrassed by the omission of the Act to supply any criteria or standards whatever to govern the Board's exercise of the determinative and quasi-judicial power claimed for it. Without these essential limitations upon the power, the delegation of the power would be unconstitutional. *Texas Antiquities v. Dallas Cty. Community,* 554 S.W.2d 924 (Tex.1977).

It has not been suggested to us that a reason even *exists* for the Legislature's placing in the Board an original power to adjudicate all or any incidental part of the parties' rights and obligations under the contracts in question—such as a benefit to be obtained by not by-passing something within the Board's specialized field. On the other hand, the nature of any controversy about whether coverage for a loss exists under the terms of the contract is one plainly, inherently, and unquestionably *judicial,* of a kind courts have adjudicated from time immemorial.

If the Legislature intended to delegate to the Board a power to determine such a controversy, the Board's power would not aptly be described as quasi-judicial. The modifier would be inapt, for the power so delegated would be plainly and simply an original *judicial* power, there being in the Act no provision for a new system of *statutory* rights, obligations, and attendant remedies to be administered by the Board. And the Act does not even purport to assign to the Board an original and exclusive power to determine some *incidental matter upon which judicial relief would depend. See Foree v. Crown Central Petroleum Corporation,* 431 S.W.2d 312 (Tex. 1968).

What the Act *would* do, under the interpretation advanced by the association, is transfer to the Board from the judicial department a power to determine originally and in a binding manner, after hearing, *all* aspects of a common-law cause of action on a class of contracts, under common-law principles, ultimately to award a common-law remedy. The statute would thus be unconstitutional as an attempt to confer upon an administrative agency a power assigned to the judicial department under the Constitution. Tex. Const.Ann. art. V, § 1 (1985); *Board of Water Engineers v. McKnight,* 111 Tex. 82, 229 S.W. 301 (Tex. 1921); *City of Houston v. Lurie,* 148 Tex. 391, 224 S.W.2d 871 (Tex.1949). But, in any event, the words of the statute will not permit even the strained inferences and assumptions such an interpretation requires.

■■■ Therefore, we interpret the word "aggrieved" to encompass only those controversies involving statutory rights and obligations under the Act, some of which may impinge upon an insured under a policy written by the association.[8] But the word does *not* imply a power in the Board to make an adjudication of an insured's claim, under his policy, that would be binding upon the parties in the manner of a judicial judgment. *See Blount v. Metropolitan, supra.* We accordingly hold that the plaintiffs' rights and the association's obligation under their contracts were not "purely statutory" and the plaintiffs' common-law causes of action were within the general original jurisdiction of the district court, which erred in dismissing them for want of jurisdiction.[9]

**8.** For example, an *insured* may invoke the hearing and determinative powers of the Board in controversies involving the decision of the association to seek revocation of the designation of his area as a "catastrophe area" or one in which fire and explosion insurance is no longer "reasonably unavailable"; or the structure of risk classifications and attendant premiums; or the association's decision that his property is not insurable under the Act. Similarly, an *insurer* may invoke the Board's powers in such matters as the level of mandatory reserves it is required to maintain for catastrophes or the assessments made against such insurer under the association's operating plan. These matters do *not* involve common-law rights and obligations. They are "purely statutory" rights and obligations under the Act, being unknown in the common law.

**9.** If it may be said in this case that the plaintiffs' rights and remedies are "purely statutory," because they derive "solely" from the Act, or that they must submit their controversy to adjudication by the State Board of Insurance because they have a statutory right to a hearing when

Even if we be mistaken in any of the foregoing, however, the same holding would be required. As mentioned previously, the plaintiffs alleged, in addition to their common-law causes of action, a right to review by trial de novo of the Board's decision. Presuming then that the 30-day limitation applied upon the bringing of such a statutory cause of action, in vindication of a *statutory* right and seeking a *statutory* remedy, the question arises of whether the 30-day limitation is constitutional. The limitation would, of course, shorten considerably the period of time ordinarily applicable to avoid the bar of limitations in a common-law cause of action on a written contract, which is four years. Tex.Rev.Civ. Stat.Ann. art. 5527 (Supp.1985). But the Legislature could constitutionally vary the limitation period *only* if "the litigant's right of redress" is outweighed by some legislative basis for imposing the 30-day restriction; that is to say, the Legislature could do so only if the 30-day limitation is not shown to be unreasonable or arbitrary when the purpose and basis of the burden imposed thereby are balanced against the litigant's right of redress. *Sax v. Votteler, supra,* at 665–66. We are unable to imagine *any* supervening reason whatever for the 30-day limitation when the plaintiffs' statutory action involves the same issues as, and will be tried de novo as a common-law cause of action exactly like, those brought on any other insurance contract and governed by the four-year statute of limitation. In such circumstances, it is not reasonable to suppose that any administrative requirement for speedy judicial review outweighs a property owner's right to judicial review of his claim, which rests upon a premium and policy form required to be "competitive" with those to which the four-year limitation period would apply.

It is obvious that we disagree with the holding and opinion in *Rowden v. Tex. Ca-* *tastrophe Prop. Ins. Ass'n,* 677 S.W.2d 83 (Tex.App.1984, writ ref'd n.r.e.). That decision and holding rest upon the stated premise that an insured's cause of action and remedy under his contract, written by the association, derive solely from the Act itself, and not from the common law. Under this premise, it is sufficient then to say that "the statutory provisions are mandatory and exclusive and must be complied with in all respects or the action is not maintainable." *Id.* at 87. *We disagree with the premise,* for the reasons set forth at length above. This premise necessitates inferences that are, in our view, wholly unjustified by the words of the Act; and such inferences are, in any event, forbidden to be made in such cases. *Key Western Life Ins. Co. v. State Board of Ins., supra.* These inferences would, in addition, raise serious questions about the constitutionality of a statute that purports by implication to abolish a common-law cause of action on a contract without substituting a reasonably sufficient statutory substitute, the substitute being in this case totally a matter of *speculation,* for no system of rights and obligations whatever is set forth in the Act and no certain and specific remedy is even implied. They would raise other due-process questions about the fundamental fairness of a statute that requires an insured to litigate his contract claim in a distant administrative forum, far from the place of the loss and attendant witnesses. They would raise equal-protection questions when insureds under similar competing policies are not subjected to the same burdens, though paying a competitive premium for their insurance coverage. (*See* § 5A(a) of the Act.) They would raise constitutional questions relative to the vagueness of a statute containing no criteria or standards to govern the Board's quasi-judicial determinations, and other constitutional questions as well. It is in our view sufficient

---

they are "aggrieved," then the same must be said of all other kinds of insurance sold under contracts approved by the Board, at premiums set by the Board, where the·Insurance Code provides no substitute system of rights, obligations, and remedies but does give a statutory right to hearing to a person "aggrieved" by the insurer or who has a "complaint" against his insurer. *See, e.g.,* Tex.Ins.Code Ann., *supra,* § 5.11 (automobile insurance) and § 5.40 (fire insurance).

merely to note that such problems are, by the *Rowden* decision, created needlessly and only by the assumption and implications therein indulged—chiefly the unwarranted assumption that an insured's rights derive solely from the Act and not the common law. *See* n. 9, *supra*.

It is also obvious that we disagree with the holding and opinion in *Texas Catastrophe Property Ins. v. Miller*, 625 S.W.2d 343 (Tex.Civ.App.1981, writ dism'd). That holding and decision rest upon the doctrine of exhaustion of administrative remedies. The applicability of this doctrine depends, however, upon a premise that the Board *has* jurisdiction to adjudicate an insured's common-law cause of action and award a common-law remedy or that the insured's common-law rights and the insurer's common-law obligation have been abolished by the Act in lieu of a statutory system of rights and obligations administered by the Board. These alternative premises are only silently assumed in the *Miller* decision, but they are indispensable to the exhaustion doctrine. We disagree with them for the reasons stated above.

In summary, we hold that the Act confers upon the Board no power to determine an insured's common-law cause of action for breach of a contract written by the association and no power to make an incidental finding necessary to judicial determination of such a cause of action; that the Board's act purporting to make any such determination is void; that the hearing and determinative powers given the Board in the Act confer power only in regard to *administrative* controversies arising under the Act; and that the trial court consequently had jurisdiction of the plaintiffs' common-law causes of action for an alleged breach of their insurance contracts by the association. We therefore reverse the judgment below and remand the causes for trial.