# MIDDLETON *v.* TEXAS POWER & LIGHT COMPANY.

ERROR TO THE COURT OF CIVIL APPEALS, THIRD SUPREME JUDICIAL DISTRICT; OF THE STATE OF TEXAS.

No. 102.  Submitted December 18, 1918.—Decided March 3, 1919.

There is a strong presumption that discriminations in state legislation are based on adequate grounds, and the mere fact that a law regulating certain classes might properly have included others does not condemn it under the equal protection clause.  P. 157.

The Texas Workmen's Compensation Act, regulating the rights and

liabilities of employers and employees respecting disabling and fatal injuries in the employment, is expressly inapplicable to domestic servants, farm laborers, common carrier railway employees, laborers in cotton gins and employees of employers employing not more than five. *Held*, that there are adequate grounds for each of these exceptions. *Id.*

The discrimination resulting between employees engaged in the same kind of work, where one employer exercises his option to come under the act and another does not, is likewise consistent with the equal protection clause. P. 159.

Construed as binding all employees who remain in the employment after notice that their employer has subscribed to compensation insurance under it, the act is not open to the objection of being optional to the employer while compulsory upon his employees when he accepts it, since the latter, by thus remaining, exercise their option also. P. 161.

As the status of employer and employee is voluntary, and in view of their different relations to the common undertaking, it is clearly within legislative discretion, and not a denial of equal protection, to leave the initiative to the former in adopting the new terms of employment, with the option to the latter of accepting them, too, after notice, or withdrawing from the service. *Id.*

A plan imposing upon the employer responsibility for making compensation for disabling or fatal injuries, irrespective of the question of fault, and requiring the employee to assume all risk of damages over and above the statutory schedule, when established as a reasonable substitute for the legal measure of duty and responsibility previously existing, may be made compulsory upon employees as well as employers, without depriving either of liberty in violation of the due process clause. P. 163.

108 Texas, 96, affirmed.

THE case is stated in the opinion.

*Mr. Chas. B. Braun* for plaintiff in error.

*Mr. Harry Preston Lawther* and *Mr. Alexander Pope* for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Alleging that in the month of December, 1913, he was in the employ of the Texas Power and Light Company in the

State of Texas, and while so employed received serious
personal injuries through the bursting of a steam pipe
due to the negligence of his employer and its agents,
Middleton sued the company in a district court of that
State to recover his damages. The defendant interposed
an answer in the nature of a plea in abatement setting
up that at the time of the accident and at the commence-
ment of the action defendant was the holder of a policy
of liability and compensation insurance, issued in its
favor by a company lawfully transacting such business in
the State, conditioned to pay the compensation provided
by the Texas Workmen's Compensation Act, which was
approved April 16, 1913, and took effect on the first day
of September in that year (c. 179, Acts of 33d Legislature),
of which fact the plaintiff had proper and timely notice
as provided by the act; and that no claim for the compen-
sation provided in the act with respect to the alleged
injury had been made by plaintiff, but on the contrary
he had refused to receive such compensation; with other
matters sufficient to bring defendant within the protec-
tion of the act. Plaintiff took a special exception in the
nature of a demurrer, upon the ground (among others)
that the act was in conflict with the Fourteenth Amend-
ment to the Constitution of the United States. The ex-
ception was overruled, the plea in abatement sustained,
and the action dismissed. On appeal to the court of
civil appeals it was at first held that the judgment must
be reversed (178 S. W. Rep. 956); but upon an application
for a rehearing the constitutional questions were certified
to the supreme court of the State. That court sustained
the constitutionality of the law (108 Texas, 96); and in
obedience to its opinion the court of civil appeals set aside
its former judgment and affirmed the judgment of the
district court. Thereupon the present writ of error was
sued out under § 237, Judicial Code, as amended by Act
of September 6, 1916, c. 448, 39 Stat. 726.

Thus we have presented, from the standpoint of an objecting employee, the question whether the Texas Employers' Liability Act is in conflict with the due process and equal protection provisions of the Fourteenth Amendment.

The act creates an Employers' Insurance Association, to which any employer of labor in the State, with exceptions to be mentioned, may become a subscriber; and out of the funds of this association, derived from premiums on policies of liability insurance issued by it to subscribing members and assessments authorized against them if necessary, the compensation provided by the act as due on account of personal injuries sustained by their employees, or on account of death resulting from such injuries, is to be paid. This is a stated compensation, fixed with relation to the employee's average weekly wages, and accrues to him absolutely when he suffers a personal injury in the course of his employment incapacitating him from earning wages for as long a period as one week, or to his representatives or beneficiaries in the event of his death from such injury, whether or not it be due to the negligence of the employer or his servants or agents. Such compensation is the statutory substitute for damages otherwise recoverable because of injuries suffered by an employee, or his death occasioned by such injuries, when due to the negligence of the employer or his servants; it being declared that the employee of a subscribing employer, or his representatives or beneficiaries in case of his death, shall have no cause of action against the employer for damages except where a death is caused by the willful act or omission or gross negligence of the employer. Employers who do not become subscribers are subject as before to suits for damages based on negligence for injuries to employees or for death resulting therefrom, and are deprived of the so-called "common law defenses" of fellow servant's negligence and assumed risk, and also of contributory

negligence as an absolute defense, it being provided that
for contributory negligence damages shall be diminished
except where the employer's violation of a statute enacted
for the safety of employees contributes to the injury or
death; but that where the injury is caused by the willful
intention of the employee to bring it about the employer
may defend on that ground. Every employer becoming
a subscriber to the insurance association is required to
give written or printed notice to all his employees that he
has provided for the payment by the association of com-
pensation for injuries received by them in the course of
their employment. Under certain conditions an employer
holding a liability policy issued by an insurance company
lawfully transacting such business within the State is to
be deemed a subscriber within the meaning of the act.
There are administrative provisions, including procedure
for the determination of disputed claims. By § 2 of
Part 1 it is enacted as follows: "The provisions of this
Act shall not apply to actions to recover damages for the
personal injuries or for death resulting from personal in-
juries sustained by domestic servants, farm laborers, nor
to the employees of any person, firm or corporation
operating any railway as a common carrier, nor to
laborers engaged in working for a cotton gin, nor to em-
ployees of any person, firm or corporation having in his
or their employ not more than five employees."

Following the order adopted in the argument of plaintiff
in error, we deal first with the contention that the act
amounts to a denial of the equal protection of the laws.
This is based in part upon the classification resulting from
the provisions of the section just quoted, it being said that
employees of the excepted classes are left entitled to cer-
tain privileges which by the act are denied to employees
of the non-excepted classes, without reasonable basis
for the distinction.

Of course plaintiff in error, not being an employee in-

any of the excepted classes, would not be heard to assert any grievance they might have by reason of being excluded from the operation of the act. *Southern Ry. Co.* v. *King*, 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, 550; *Rosenthal* v. *New York*, 226 U. S. 260, 271; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571, 576. But plaintiff in error sets up a grievance as a member of a class to which the act is made to apply.

However, we are clear that the classification can not be held to be arbitrary and unreasonable. The Supreme Court of Texas in sustaining it said (108 Texas, 110–111): "Employees of railroads, those of employers having less than five employees, domestic servants, farm laborers and gin laborers are excluded from the operation of the Act, but this was doubtless for reasons that the legislature deemed sufficient. The nature of these several employments, the existence of other laws governing liability for injuries to railroad employees, known experience as to hazards and extent of accidental injuries to farm hands, gin hands and domestic servants, were all matters no doubt considered by the legislature in exempting them from the operation of the Act. Distinctions in these and other respects between them and employees engaged in other industrial pursuits may, we think, be readily suggested. We are not justified in saying that the classification was purely arbitrary."

There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds. The equal protection clause does not require that state laws shall cover the entire field of proper legislation in a single enactment. If one entertained the view that the act might as well have been extended to other classes of employment, this would not

amount to a constitutional objection. *Rosenthal v. New York*, 226 U. S. 260, 271; *Patsone v. Pennsylvania*, 232 U. S. 138, 144; *Missouri, Kansas & Texas Ry. Co. v. Cade*, 233 U. S. 642, 649–650; *International Harvester Co. v. Missouri*, 234 U. S. 199, 215; *Keokee Coke Co. v. Taylor*, 234 U. S. 224, 227; *Miller v. Wilson*, 236 U. S. 373, 384.

The burden being upon him who attacks a law for unconstitutionality, the courts need not be ingenious in searching for grounds of distinction to sustain a classification that may be subjected to criticism. But in this case adequate grounds are easily discerned. As to the exclusion of railroad employees, the existence of the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65; c. 143, 36 Stat. 291, applying exclusively as to employees of common carriers by rail injured while employed in interstate commerce, establishing liability for negligence and exempting from liability in the absence of negligence in all cases within its reach (*New York Central R. R. Co. v. Winfield*, 244 U. S. 147; *Erie R. R. Co. v. Winfield*, 244 U. S. 170), and the difficulty that so often arises in determining in particular instances whether the employee was employed in interstate commerce at the time of the injury (see *Pedersen v. Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146, 151–152; *North Carolina R. R. Co. v. Zachary*, 232 U. S. 248, 259–260; *Illinois Central R. R. Co. v. Behrens*, 233 U. S. 473, 478; *New York Central R. R. Co. v. Carr*, 238 U. S. 260, 263; *Pennsylvania Co. v. Donat*, 239 U. S. 50; *Shanks v. Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, 559; *Louisville & Nash. R. R. Co. v. Parker*, 242 U. S. 13; *Erie R. R. Co. v. Welsh*, 242 U. S. 303, 306; *Southern Ry. Co. v. Puckett*, 244 U. S. 571, 573), reasonably may have led the legislature to the view that it would be unwise to attempt to apply the new system to railroad employees, in whatever kind of commerce employed, and that they might better be left to common-law actions with statu-

tory modifications already in force (Vernon's Sayles' Texas Civ. Stats. 1914, Arts. 6640–6652), and such others as experience might show to be called for.

The exclusion of farm laborers and domestic servants from the compulsory scheme of the New York Workmen's Compensation Act was sustained in *New York Central R. R. Co.* v. *White*, 243 U. S. 188, 208, upon the ground that the legislature reasonably might, consider that the risks inherent in those occupations were exceptionally patent, simple, and familiar. The same result has been reached by the state courts generally. *Opinion of Justices*, 209 Massachusetts, 607, 610; *Young* v. *Duncan*, 218 Massachusetts, 346, 349; *Hunter* v. *Colfax Coal Co.*, 175 Iowa, 245, 287; *Sayles* v. *Foley*, 38 R. I. 484, 490–492. Similar reasoning may be applied to cotton gin laborers in Texas; indeed, it was applied to them by the supreme court of that State, as we have seen. And the exclusion of domestic servants, farm laborers, casual employees, and railroad employees engaged in interstate commerce was sustained in *Mathison* v. *Minneapolis Street Ry. Co.*, 126 Minnesota, 286, 293.

The exclusion of employees where not more than four or five are under a single employer is common in legislation of this character, and evidently permissible upon the ground that the conditions of the industry are different and the hazards fewer, simpler, and more easily avoided where so few are employed together; the legislature, of course, being the proper judges to determine precisely where the line should be drawn. Classification on this basis was upheld in *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571, 576–577, and has been sustained repeatedly by the state courts. *State* v. *Creamer*, 85 Ohio St. 349, 404–405; *Borgnis* v. *Falk Co.*, 147 Wisconsin, 327, 355; *Shade* v. *Cement Co.*, 93 Kansas, 257, 259; *Sayles* v. *Foley*, 38 R. I. 484, 491, 493.

The discrimination that results from the operation of the

act as between the employees of different employers engaged in the same kind of work, where one employer becomes a subscriber and another does not, furnishes no ground of constitutional attack upon the theory that there is a denial of the equal protection of the laws. That the acceptance of such a system may be made optional is too plain for question; and it necessarily follows that differences arising from the fact that all of those to whom the option is open do not accept it must be regarded as the natural and inevitable result of a free choice, and not as a legislative discrimination. They stand upon the same fundamental basis as other differences in the conditions of employment arising from the variant exercise by employers and employees of their right to agree upon the terms of employment. And see *Borgnis* v. *Falk Co.*, 147 Wisconsin, 327, 354; *Mathison* v. *Minneapolis Street Ry. Co.*, 126 Minnesota, 286, 294.

In recent years many of the States have passed elective workmen's compensation laws not differing essentially from the one here in question, and they have been sustained by well-considered opinions of the state courts of last resort against attacks based upon all kinds of constitutional objections, including alleged denial of the equal protection of the laws; usually, however, from the standpoint of the employer. *Sexton* v. *Newark District Telegraph Co.*, 84 N. J. L. 85; 86 N. J. L. 701; *Opinion of Justices*, 209 Massachusetts, 607; *Young* v. *Duncan*, 218 Massachusetts, 346; *Borgnis* v. *Falk Co.*, 147 Wisconsin, 327; *State* v. *Creamer*, 85 Ohio St. 349; *Deibeikis* v. *Link-Belt Co.*, 261 Illinois, 454; *Crooks* v. *Tazewell Coal Co.*, 263 Illinois, 343; *Victor Chemical Works* v. *Industrial Board*, 274 Illinois, 11; *Mathison* v. *Minneapolis Street Ry. Co.*, 126 Minnesota, 286; *Shade* v. *Cement Co.*, 93 Kansas, 257; *Sayles* v. *Foley*, 38 R. I. 484; *Greene* v. *Caldwell*, 170 Kentucky, 571; *Hunter* v. *Colfax Coal Co.*, 175 Iowa, 245. The Ohio law was sustained by this court against special

attacks in *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571, 576, and the Iowa law in *Hawkins* v. *Bleakly*, 243 U. S. 210, 213, *et seq.*

Stress is laid upon the point that the Texas act, while optional to the employer, is compulsory as to the employee of a subscribing employer. Our attention is not called to any express provision prohibiting a voluntary agreement between a subscribing employer and one or more of his employees taking them out of the operation of the act; but probably such an agreement might be held by the courts of the State to be inconsistent with the general policy of the act; the supreme court, in the case before us, did not intimate that such special agreements would be permissible; and hence it is fair to assume that all who remain in the employ of a subscribing employer, with notice that he has provided for payment of compensation by the association or by an authorized insurance company, will be bound by the provisions of the act.

But a moment's reflection will show the impossibility of giving an option both to the employer and to the employee and enabling them to exercise it in diverse ways. The provisions of the act show that the legislative purpose is that it shall take effect only upon acceptance by both employer and employee. The former accepts by becoming a subscriber; the latter by remaining in the service of the employer after notice of such acceptance. And we see in this no ground for holding that there is a denial of the equal protection of the laws as between employer and employee. They stand in different relations to the common undertaking, and it was permissible to recognize this in determining how they should accept or reject the new system. The employer provides the plant, the organization, the capital, the credit, and necessarily must control and manage the operation. In the nature of things his contribution has less mobility than that of the employee, who may go from place to place seeking

satisfactory employment, while the employer's plant and business are comparatively, even if not absolutely, fixed in position. Again, in order that the new scheme of compensation should be a success, the legislature deemed it proper, if not essential, that the payment of compensation to the injured employees or their dependents should be rendered secure, and the losses to individual employers distributed, by a system of compensation insurance, in which it was deemed important that all employees of a given employer should be treated alike. Still further, there are reasons affecting the contentment of the employees and the discipline of the force, rendering it desirable that all serving under a common employer should be subject to a single rule as to compensation in the event of injury or death arising in the course of the employment. These and other considerations that might be suggested fully justified the legislative body of the State in determining that acceptance of the new system should rest upon the initiative of the employer, and that any particular employee who with notice of the employer's acceptance dissented from the resulting arrangement should be required to exercise his option by withdrawing from the employment. The relation of employer and employee being a voluntary relation, it was well within the power of the State to permit employers to accept or reject the new plan of compensation, each for himself, as a part of the terms of employment; and in doing this there was no denial to employees of the equal protection of the laws within the meaning of the Fourteenth Amendment.

This disposes of all contentions made under the equal protection clause.

It is argued further that there is a deprivation of liberty and property without due process of law in requiring employees, willingly or unwillingly, to accept the new system where their employer has adopted it. Of course there is no suggestion of a deprivation of vested property

in the present case, since the law was passed in April and took effect in September, while the plaintiff's injuries were received in the following December, after he had been notified of his employer's acceptance of the act. What plaintiff has lost, therefore, is only a part of his liberty to make such contract as he pleased with a particular employer and to pursue his employment under the rules of law that previously had obtained fixing responsibility upon the employer for any personal injuries the plaintiff might sustain through the negligence of the employer or his agents. But, as has been held so often, the liberty of the citizen does not include among its incidents any vested right to have the rules of law remain unchanged for his benefit. The law of master and servant, as a body of rules of conduct, is subject to change by legislation in the public interest. The definition of negligence, contributory negligence, and assumption of risk, the effect to be given to them, the rule of *respondeat superior*, the imposition of liability without fault, and the exemption from liability in spite of fault—all these, as rules of conduct, are subject to legislative modification. And a plan imposing upon the employer responsibility for making compensation for disabling or fatal injuries irrespective of the question of fault, and requiring the employee to assume all risk of damages over and above the statutory schedule, when established as a reasonable substitute for the legal measure of duty and responsibility previously existing, may be made compulsory upon employees as well as employers. *New York Central R. R. Co.* v. *White*, 243 U. S. 188, 198–206; *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 234.

All objections to the act on constitutional grounds being found untenable, the judgment under review is

*Affirmed.*