

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

February 28, 1963

Hon. Menton J. Murray, Chairman          Opinion No. C-23
Sub-Committee, Public Health
House of Representatives                  Re:  Whether House Bill
Austin, Texas                                  167 is constitutional.

Dear Mr. Murray:

You have requested an opinion from this office as to
whether House Bill 167, presently pending in the House of Rep-
resentatives, is constitutional. You have advised us that the
Committee as a whole instructed you to request same.

You have stated in your letter that:

"The bill seeks to permit, through an elec-
tion, the establishment of a school for retarded
children. Some members of the committee are of
the opinion that in order to establish such a
retarded school district, we would have to amend
the Constitution similar to amendments required
when an area seeks to set up a hospital district."

House Bill 167 authorizes the establishment of Rehabi-
litation Districts, composed of a county or a combination of
counties, to provide education, training and special services
and guidance for mentally retarded and physically handicapped
persons over six (6) years of age. House Bill 167 further pro-
vides that:

"All powers relating to the acquisition of
land, the construction or acquisition of facilities
except the issuance of bonds, and to taxation,
vested by law in independent school districts, shall
be applicable to any Rehabilitation district, sub-
ject to a tax limitation of five cents (5¢) on each
One Hundred Dollars ($100.00) valuation."

-91-

Also, in Section 7(i) of House Bill 167, which deals with the powers of a Rehabilitation District, there is granted to the Board of Directors of the District the authority to:

"(3) Levy taxes and make such distribution of such taxes as it may deem necessary for providing needed housing and facilities, and for the support of the Rehabilitation program, except that the total annual tax for all District purposes shall not exceed the rate of five cents (5¢) on each One Hundred Dollars ($100.00) of assessed valuation of taxable property located in such district;"

The procedure set forth in House Bill 167 for the formation of a Rehabilitation District requires that a petition requesting an election upon the issue of creating a Rehabilitation District be filed with the Commissioners Court, and after the filing of such petition the Commissioners Court is required to order an election for the purpose of determining whether a Rehabilitation District will be established.

It is apparent from a reading of House Bill 167 that the Rehabilitation Districts provided for therein are a form of special school districts with the purpose of providing education, training and guidance for mentally retarded and physically handicapped children of school age who could not safely or adequately be educated in the existing public schools.

Section 1 of Article VII of the Constitution of Texas provides that:

"A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

Section 3 of Article VII of the Constitution of Texas provides in part that:

". . .provided, however, that should the limit of taxation herein named be insufficient the deficit may be met by appropriation from the general funds of the State and the Legislature may also provide for the formation of school district by general laws; and

all such school districts may embrace parts of two or more counties, <u>and the Legislature shall be au-</u> <u>thorized to pass laws for the assessment and collec-</u> <u>tion of taxes in all said districts</u> and for the manag- ement and control of the public school or schools of such districts, whether such districts are composed of territory wholly within a county or in parts of two or more counties, <u>and the Legislature may authorize</u> <u>an additional ad valorem tax to be levied and collected</u> <u>within all school districts heretofore formed or here-</u> <u>after formed,</u> for the further maintenance of public free schools, and for the erection and equipment of school buildings therein;. . ." (Emphasis added)

Section 48 of Article III of the Constitution of Texas provides in part that:

"The Legislature shall not have the right to levy taxes or impose burdens upon people, ex- cept to raise revenue sufficient for the economical administration of the Government in which may be included the following purposes:

". . .

"The support of public schools, in which shall be included colleges and universities established by the State; and the maintenance and support of the Agricultural and Mechanical College of Texas."

The above quoted provisions of the Constitution of Texas clearly establish that it is the duty of the Legislature to provide for an efficient system of public schools in this State. The same provisions of the Constitution also clearly show that the Legislature is authorized to create school dis- tricts as well as to provide for the assessment and collection of taxes in such school districts. While the type of special school districts proposed in House Bill 167 tends to fall out- side of the generally recognized types of school districts, it is also well recognized by the courts of this State that the Legislature has broad discretion in enacting laws which it deems necessary and expedient in organizing, operating, and maintain- ing the public school system of this State. <u>Mumme</u> v. <u>Marrs</u>, 120 Tex. 383, 40 S.W.2d 31 (1931); <u>El Dorado Independent School</u> <u>District</u> v. <u>Tisdale</u>, 3 S.W.2d 420 (Comm.App. 1928); and <u>Wilson</u> v. <u>Abilene Independent School District</u>, 190 S.W.2d 406 (Tex. Civ.App. 1945, error ref. w.o.m.). In addition, it is stated in 37 Tex.Jur. 847, Schools, Sec. 5, that:

"Under the Constitution public education is
a division or department of the government the
affairs of which are administered by public of-
ficers, and in the conduct of which the Legislature
has all legislative power not denied it by the
fundamental law.  In ascertaining the power which
the Legislature may constitutionally exercise with
reference to the school system, the courts will
not limit or restrict that power unless they find
in the Constitution itself a specific limitation
or one which arises by necessary implication from
the language used.  Consequently the Legislature
may pass such laws as in its discretion appear
necessary and expedient for effectuating the
declared policy, subject only to the general
limitations imposed in the organic law.  It is
the judge of what means are necessary and appro-
priate for the purpose, and its determination will
not be reviewed by the courts if the act has a
real relation to the subject and the object of the
Constitution."

The courts in this State have held that liberal rules
for construction of the Constitution of Texas should apply in
determining the power of the Legislature in organizing the pub-
lic school programs of this State.  Mumme v. Marrs, supra.  In
the case of Texas National Guard Armory Board v. McCraw, 132 Tex.
613, 126 S.W.2d 627 (1939), the Court said that:

"This Court has repeatedly held that no
act of the Legislature will be declared uncons-
titutional unless some provision of the Constitu-
tion can be cited which clearly shows the invalidity
of such act.  Brown v. City of Galveston, 97 Tex.
1, 75 S.W. 488; 9 Tex.Jur., sec. 59, pp. 477, 478,
and cases cited in footnotes.  The burden is on him
who attacks a law for unconstitutionality and courts
need not exert their ingenuity to find reasons for
holding the law invalid.  As was said by the Supreme
Court of the United States in the case of Middleton
v. Texas Power & Light Co., 249 U.S. 152, at page
157:  39 S.Ct. 227, at page 229, 63 L.Ed. 527:
'There is a strong presumption that a Legislature
understands and correctly appreciates the needs
of its own people, that its laws are directed to
problems made manifest by experience, and that
its discriminations are based upon adequate
grounds.'

"If doubt should be raised as to the validity of a statute, such statute should be held valid unless it clearly violates some provision of the Constitution."

In view of the foregoing authorities we are of the opinion that the creation of Rehabilitation Districts as proposed by House Bill 167 would be a valid enactment of the Legislature pursuant to Section 1 and Section 3 of Article VII of the Constitution of Texas, and would not require the submission of a constitutional amendment authorizing the creation of this type of district.

## S U M M A R Y

The creation of Rehabilitation Districts as proposed by House Bill 167 would be a valid enactment of the Legislature pursuant to Section 1 and Section 3 of Article VII of the Constitution of Texas, and would not require the submission of a constitutional amendment authorizing the creation of this type of district.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

Pat Bailey
Assistant

PB:mkh: wb

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
J. C. Davis
W. O. Shultz
Ernest Fortenberry
Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone