**Pauline A. McCLARY, Administratrix of the Estate of Roger C. McClary, Deceased, Appellant,**

v.

**Richard O'HARE, as Superintendent of the Steuben County Highway Department; County of Steuben; Lillian Roberts, as Commissioner of Labor of the State of New York; State of New York; Civil Service Employees Association, Appellees.**

**No. 272, Docket 85–7518.**

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1985.

Decided March 17, 1986.

John W. Vogel, Dansville, N.Y. (Edward J. Degnan, Canisteo, N.Y., of counsel), for appellant.

Barbara J. Delgross (Mark G. Farrell, Buffalo, N.Y., of counsel), for appellee O'Hare.

Frederick H. Ahrens, Jr., Bath, N.Y. (Michael T. Tomaino, Kathleen A. Frensky, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., of counsel), for appellee Steuben County.

Michael S. Buskus, Asst. Atty. Gen., State of N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Robert Hermann, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., Albany, N.Y., of counsel), for appellees Roberts and the State of N.Y.

Before OAKES, NEWMAN and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

Roger C. McClary died on June 2, 1983, in the course of his employment with the Steuben County Highway Department when a wire cable on a mobile truck crane being operated by a fellow employee broke, causing the boom of the crane to fall and strike the decedent in the head. His wife, administratrix of his estate, brought suit under 42 U.S.C. § 1983 (1982) and its jurisdictional counterpart, 28 U.S.C. § 1343 (1982), against the County; against Richard O'Hare, the superintendent of the County highway department; against the State of New York; and against Lillian Roberts, Commissioner of Labor of the State of New York.[1] McClary alleged in her complaint that the crane operator did not have a certificate of competency, contrary to N.Y.Gen.Bus.Law § 482 (McKinney 1984); that the County and Superintendent O'Hare authorized, permitted, directed, and required this operator to operate the crane; and that O'Hare neglected to follow state occupational safety and health laws by failing to inspect the crane and maintain it in a safe condition or to provide the decedent with a safe work place. The United States District Court for the Western District of New York, Michael

---

1. Appeal was withdrawn as against the Civil Service Employees Association, also named as a defendant.

A. Telesca, Judge, dismissed the complaint. We affirm.

As to the County and Superintendent O'Hare, the complaint asserts that acting under color of state law the Highway Department and its Superintendent deliberately disregarded and violated state laws, rules, and regulations for occupational safety and the operation of mobile cranes thereby creating a high risk of danger to the decedent and thus (1) denying equal protection of the law to County employees as opposed to those in private industry;[2] (2) denying decedent his substantive due process right to life; and (3) depriving decedent of his right to procedural due process of law as no adequate state remedy for the deprivation existed, Workers' Compensation Law, the exclusive remedy, being inadequate. A fourth claim was made against all defendants on the basis of pendent state law, and a fifth claim was made against the Commissioner of Labor and the State of New York for failure to enforce the New York State Occupational Safety and Health Act ("SOSHA"), N.Y.Lab.Law § 27-a (McKinney Supp.1986), and the requirements of the General Business Law relative to certificates of competency of mobile crane operators. The appellees claim that any section 1983 action is barred by the exclusivity provisions of the Workers' Compensation Law, a question the district judge did not reach in dismissing the other claims on the merits.

■ We reach the appellees' claim first. The New York Workers' Compensation Law makes the liability of an employer for workers' compensation benefits "exclusive and in place of any other liability whatsoever ... at common law or otherwise...." N.Y.Work.Comp.Law § 11 (McKinney Supp.1986). Numerous cases have upheld the constitutionality of the exclusivity provisions of state compensation laws, *see, e.g., Middleton v. Texas Power &*

*Light Co.,* 249 U.S. 152, 162–63, 39 S.Ct. 227, 230–31, 63 L.Ed. 527 (1919); *Davidson v. Hobart Corp.,* 643 F.2d 1386, 1387 (10th Cir.1981), but this does not mean that a state statute's exclusivity provision may bar a federal civil rights action. *See Rosa v. Cantrell,* 705 F.2d 1208, 1221 (10th Cir. 1982), *cert. denied,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983). Conduct that is wrongful under section 1983 cannot be immunized by state law. *See Martinez v. California,* 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 558 & n. 8, 62 L.Ed.2d 481 (1980) (state statute giving immunity to officials for injuries arising from their parole decisions does not control section 1983 claim). We pass therefore to appellant's section 1983 claims.

■ Were appellant complaining merely of negligent conduct on appellees' part, the Supreme Court has recently held that such claims do not state a due process violation cognizable under section 1983. *See Daniels v. Williams,* — U.S. —, —, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property.") (emphasis in original); *Davidson v. Cannon,* — U.S. —, —, 106 S.Ct. 668, 669, 88 L.Ed.2d 677 (1986). However, we feel that the complaint adequately alleges, for purposes of a motion to dismiss, that the officials engaged in acts that were at the very least reckless. *Daniels* expressly eschewed determination of the sufficiency of allegations of recklessness in a section 1983 action. — U.S. at — n. 3, 106 S.Ct. at 666 n. 3. *Davidson* did not involve reckless conduct, according to Justice Rehnquist's majority opinion. — U.S. at — – —, 106 S.Ct. at 669–70. *But see id.* at — n. 2, —, 106 S.Ct. 673 n. 2, 674 (Pt. III) (Blackmun, J., dissenting). We therefore cannot dispose of appellant's claims so simply, and must look to their

---

2. Appellant's equal protection claim appears to be that the County's intentional failure to follow state safety laws resulted in public employees being treated with less care than private employees. She also claims that the remedy of workers' compensation violates equal protection by barring injured workers from suing their employers when the injury was caused by the employer's willful disregard of public policy. Those claims have been abandoned on appeal after the district court dismissed them as "border[ing] on the frivolous."

merits to determine whether the alleged acts rise to a constitutional violation.

We read the procedural due process claim against the County and the Highway Superintendent as not merely alleging incompetence of County employees but as alleging that an established state procedure—the alleged policy of disobeying state and federal safety regulations—caused McClary to be deprived of his life, and that, in any case, the available post-deprivation remedy provided by the Workers' Compensation Law is inadequate to satisfy the requirements of procedural due process. In alleging an "established state procedure" counsel was doubtless relying on language in *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), in an effort to remove this case from the holding of *Parratt* and of *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) (*Parratt* extends to intentional deprivations of prop-

erty), that where, through misconduct, State actors deprive a person of property, and no pre-deprivation remedy is possible, there has been no procedural due process violation if adequate post-deprivation remedies exist. Counsel thus attempts to elevate the claim from one sounding in state tort law to one of constitutional dimensions, under the rubric of procedural due process.[3]

■ Although the parties assume that *Parratt* applies to this case, in which a deprivation of life, rather than property, is alleged, whether it does in fact apply remains undecided by the Supreme Court. In *Conway v. Village of Mount Kisco,* 758 F.2d 46, 48 (2d Cir.1985), *cert. granted sub nom. Cerbone v. Conway,* — U.S. —, 106 S.Ct. 878, 88 L.Ed.2d 915 (1986), we noted that *Parratt* and *Hudson* involved claims for deprivation of property, and declined to apply *Parratt* to a deprivation of

---

**3.** Procedural due process generally requires "'some kind of hearing,'" *see* Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267, 1267 (1975) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)), before the state deliberately deprives an individual of liberty or property. Its applicability to the kind of case we have here, which the Supreme Court had in *Parratt,* where the deprivation would be unjustified regardless of what procedures preceded it, seems hard to fathom. *See Wells & Eaton, Substantive Due Process and the Scope of Constitutional Torts,* 18 Ga.L.Rev. 201, 219 (1984). To make sense of *Parratt,* it seems necessary to interpret the case to make precisely this point: that "when a predeprivation hearing is clearly not feasible, when the regime of state tort law provides a constitutionally unobjectionable system of recovery for the deprivation of property or liberty, and when there is no other challenge to the State's procedures," no procedural due process claim will lie. *Daniels,* — U.S. at — - — —, 106 S.Ct. at 678–679 (Stevens, J., concurring in the judgment) (footnotes omitted).

This interpretation assumes that *Parratt* applies only to procedural due process. We think this is correct. While the language of the Court's opinion in *Parratt* is sufficiently broad to address both procedural and substantive due process issues, it nevertheless states that it is only determining "whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process,"

451 U.S. at 537, 101 S.Ct. at 1914, and relies on procedural due process case law. Justices Blackmun, White, and Powell, in two separate concurrences, *id.* at 545, 101 S.Ct. at 1917 and at 552–53, 101 S.Ct. at 1921–22, suggest that *Parratt* is limited to the procedural due process issue, as does Justice Stevens, concurring in *Daniels,* — U.S. at — —, 106 S.Ct. at 677. A number of courts have so held, *see, e.g., Gilmere v. City of Atlanta,* 774 F.2d 1495, 1499–1500 (11th Cir. 1985) (en banc), *petition for cert. filed,* 54 U.S. L.W. 3565 (U.S. Feb. 7, 1986); *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed as improvidently granted,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982). Such an interpretation is appropriate for two reasons. First, where a violation of substantive due process is alleged, "the constitutional violation is complete as soon as the prohibited action is taken." *Daniels,* — U.S. at — —, 106 S.Ct. at 678 (Stevens, J., concurring). No purpose would be served by requiring the victim of such a violation to pursue state tort remedies. Second, a contrary interpretation, applying *Parratt* to substantive due process violations, would require a claimant to resort to state tort remedies in precisely those situations—involving the abuse of governmental power—to which section 1983 was directed. *See Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1180 (M.D. Tenn.1982).

Given our conclusion that *Parratt* is inapplicable to substantive due process cases, we address appellant's substantive due process claim, *infra,* without considering the state remedies available to her.

liberty.[4]  *See also Parratt*, 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring) (reading Court's opinion as inapplicable to a deprivation of life or liberty); *Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177, 1178–79 (M.D.Tenn.1982). However, we need not here decide if *Parratt* applies to a deprivation of life; in this case we reach the same result whether we apply *Parratt* or not.  Assuming that *Parratt* does not apply, we must consider what pre-deprivation process was due here.  It is difficult for us to see what sort of process the State should or could have provided the deceased.  Procedural due process requires that certain procedures be followed before (or under *Parratt* after) the State can properly take life, liberty, or property.  Appellant does not claim that any *procedures* the State could have followed would have made the accidental, even if recklessly caused, deprivation of her husband's life proper. Appellant complains that state actors caused her husband's death, not that in doing so they failed somehow to apply the proper procedures.  Procedural due process is simply not implicated in this case at all.

■ Assuming that *Parratt* does apply to this case yields the same result.  Appellant's claim that the deprivation here was effected by an "established state procedure" meets a major difficulty: any claim against a state or local official that sounds in tort can be pleaded, as this one is, as an "established state procedure" case.  *See Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1456 (11th Cir.1985); *Holmes v. Ward*, 566 F.Supp. 863, 866–67 (E.D.N.Y. 1983).  Since *Parratt's* thrust is to avoid "turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983," *Parratt*, 451 U.S. at 544, 101 S.Ct.

at 1917, allowing all claims sounding essentially in tort to evade *Parratt* through artful pleading would make the case meaningless.

We think that *Parratt's* "established state procedure" exception was intended to apply only where the procedure deprives the claimant of predeprivation process it would otherwise be possible to provide. *See Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917 ("nor is there any contention that it was practicable for the State to provide a predeprivation hearing" before mishandling and losing claimant's property). In those cases finding that a deprivation occurred as a result of an established state procedure, *e.g.*, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982) (state statute required dismissal of an employment discrimination claim if state commission, for whatever reason, failed to commence hearing in timely fashion); *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir.1983) (demolition of a building pursuant to a wrongfully obtained condemnation order), predeprivation process was possible.  Here, by contrast, the event, however tragic, was an accident neither the occurrence of which nor the particular victim of which could have been predicted and for which no predeprivation process could possibly have been provided.  Thus, we conclude that although McClary was deprived of his life "under color of state law, the deprivation did not occur as a result of some established state procedure." *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1917.

■ The next step in the *Parratt* analysis is to consider the adequacy of the available post-deprivation state remedy.  Appellant claims that the exclusive remedy under state law, the Workers' Compensation Law, is inadequate because its exclusivity provisions constitute an invidious form of dis-

---

**4.**  We also note that in *Conway*, plaintiff's claim sounded in large part in substantive rather than procedural due process; her allegations—that private and state actors wrongfully conspired to arrest her and deprive her of her liberty—state what we consider to be the essence of a substantive due process violation.  Moreover, to the

extent Ms. Conway stated a procedural due process violation, a pre-deprivation remedy was more plausible in that case, where the arresting officer allegedly knew that the arrest warrant was based on false information, than in this one, where the actual deprivation occurred in a random and unpredictable way.

crimination and deprivation of due process and equal protection of the laws by depriving employees of the right to recover damages from the employer outside of Workers' Compensation. That contention simply cannot stand.[5] Workers' compensation statutes, which impose liability without fault on employers' insurers with respect to claims by employees or their personal representatives, have been substantively upheld against due process challenge time and again in the United States Supreme Court. *See Crowell v. Benson,* 285 U.S. 22, 42, 52 S.Ct. 282, 289, 76 L.Ed. 598 (1932) (citing cases). While workers' compensation in this case may not be as fully compensatory as a suit under section 1983 would be, the federal Constitution does not set a standard so high as to require total compensation for all injuries. *See Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17.

■ The more difficult question, and what we perceive to be the heart of this case, is whether the complaint sufficiently alleges a deprivation of life without substantive due process to withstand dismissal. *See* Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts,* 18 Ga.L.Rev. 201, 203–04 & n. 10 (1984). The doctrine of substantive due process protects the individual against certain government actions "regardless of the fairness of the procedures used to implement them...." *Daniels,* —— U.S. at ——, 106 S.Ct. at 665 (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)); *see* Wells & Eaton, *supra,* 18 Ga.L.Rev. at 215. *See also Johnson v. Glick,* 481 F.2d 1028, 1032–33 (2d Cir.) (holding that while allegations of officer brutality made by pretrial detainee did not state a claim under the Eighth Amendment, they did state a claim under section 1983 for a substantive due process violation), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). It thus may fairly be said that a person has a substantive due process right not to be deprived of life.

But the necessary analysis does not of course stop there. The issue before us is when a deprivation of life or liberty assumes constitutional dimensions. *Daniels* held that the due process clause was intended to "prevent governmental power from being 'used for purposes of oppression.'" —— U.S. at ——, 106 S.Ct. at 665 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 277, 15 L.Ed. 272 (1856)). The *Daniels* Court went on to hold that negligently leaving a pillow on a prison staircase did not amount to an abuse of power violative of the due process clause. Much of the case law on substantive due process was developed with this notion implicit, if not expressed; in *Johnson, e.g.,* the plaintiff was substantially under the state's control and many of the cases permitting recovery on a substantive due process ground for personal injury or death involve a person in state custody or under the state's control. Such persons are clearly subject to abuses of the government's significant power over them. By contrast, where a member of the public is harmed as a result of a government official's failure to act, a constitutional violation is not generally found, *see Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982); *cf. Martinez,* 444 U.S. at 284–85, 100 S.Ct. at 558–59 (parole board not liable under section 1983 for murder by parolee; causal connection too tenuous), unless the government conduct is "sufficiently severe, sufficiently disproportionate to the need presented and so deliberate and unjustified a misuse of [authority] as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Shillingford v. Holmes,* 634 F.2d 263, 266 (5th Cir.1981) (tourist attempting to photograph an arrest struck in face with nightstick by police officer); *cf. York v. City of Cedartown,* 648 F.2d 231, 232–33 (5th Cir.1981) (negligent design of street and drainage system causing damage to plaintiff's property does not rise to constitutional violation). Where the government's control is lessened, so is its duty, and its failings are less likely to

---

**5.** Appellant abandons her equal protection claim on appeal. *See supra* note 2.

be of constitutional proportions cognizable under section 1983. Here, even though plaintiff's decedent was an employee of the state, as a moving equipment operator supervisor, he could hardly be said to have been under the County's direct physical control.

In *Daniels*, moreover, the Court noted that "[t]he only tie between the facts of [that] case and anything governmental in nature" was that one of the parties was a prison employee and the other an inmate. — U.S. at —, 106 S.Ct. at 666. Similarly, the only fact distinguishing this case from an ordinary tort action brought by an employee against an employer is the identity of that employer. Plaintiff alleges that Highway Department Superintendent O'Hare intentionally failed to follow the safety requirements, including inspection, and the requirement that the crane operator have his certificate of competency, in order to cut costs. But it is not suggested that he intended to abuse his power as a *state official* to harm Roger McClary. Rather, whatever abuses O'Hare committed were abuses of authority that he held as an employer; identical actions could have been carried out by a private employer, for the same reasons and with the same regrettable consequences. A cable broke, and while the result was tragic, it does not amount to a deprivation without due process of law in this substantive sense. As the Court stated in *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." We do not think that improper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official. This is simply not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual. *Cf. Conway v. Village of Mount Kisco*, 750 F.2d 205 (2d Cir.1984), *reaff'd*, 758 F.2d 46 (2d Cir.1985) (police detective has unique authority to arrest and jail individual; justice of peace uniquely situated to manipulate docket entries so as to void malicious prosecution action), *cert. granted sub nom. Cerbone v. Conway*, — U.S. —, 106 S.Ct. 878, 88 L.Ed.2d 915 (1986).[6] In sum, under these circumstances, the substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer.

The fourth cause of action alleged against all defendants is a pendent state claim that was dismissed below, and appears to have been abandoned on appeal. That being the case, we see no reason to disturb the district court's ruling.

■ The claim against the Commissioner of Labor and the State of New York for failing to enforce SOSHA and the General Business Law, while made in the complaint, has been abandoned on appeal. *See International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985); 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 228.02[2.–1] (2d ed. 1985). Even if it had not been abandoned, the claim against the state would of course fall by virtue of the Eleventh Amendment since it involves the payment of public funds from the state treasury. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). So far as Lillian Roberts, the Commissioner of

---

**6.** Although we hold that reckless acts of a government employer that harm employees do not give rise to a substantive due process violation as long as the challenged conduct is not uniquely governmental in character, we by no means intend to exclude grossly negligent, reckless, or intentional abuses of *governmental* authority from the purview of section 1983. *See Daniels*, — U.S. at — & n. 3, 106 S.Ct. at 667 & n. 3; *Davidson*, — U.S. at —, 106 S.Ct. at 671 (Brennan, J., dissenting). Nor do we view this decision as a grant of immunity to government employers acting as such. Where harms caused by government employers to their employees are attributable to the abuse of the government's authority rather than to an ordinary tort, such harms would continue to be actionable under section 1983.

Labor, is concerned, she is sued here exclusively in her official capacity, which is for Eleventh Amendment purposes a suit against the state, *see Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985) (municipality; "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents ...."), since the state is the real party in interest, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984), and since an adverse judgment would be paid by the state. Thus, the claim against her was also properly dismissed.

Judgment affirmed.