Eugene COLLINS, Appellant–Plaintiff,

v.

Glen DAY, Appellee–Defendant.

No. 93A02–9110–EX–449.

Court of Appeals of Indiana,
Fourth District.

Dec. 14, 1992.

Rehearing Denied Jan. 22, 1993.

William Levy, Yosha Cline Farrell & Ladendorf, Richard A. Waples, Indiana Civil Liberties Union, Indianapolis, for appellant-plaintiff.

Nancy Hale, amicus curiae, Legal Services Organization of Indiana, Inc., Indianapolis.

Pamela K. Thompson, Sandra L. Heeke, Smith Bartlett Heeke & Carpenter, Jeffersonville, for appellee-defendant.

CHEZEM, Judge.

## Case Summary

Plaintiff–Appellant, Eugene Collins (Collins), appeals from the dismissal of his request for worker's compensation benefits. We affirm.

## Issue

Collins presents one issue for our review, which we restate as follows:

Does the exclusion of agricultural employees from the coverage of the Indiana Worker's Compensation Act (Act) violate the equal privileges and immunities clause of Article I, Section 23, of the Indiana Constitution, or the equal protection clause of the Fourteenth Amendment to the United States Constitution?

## Facts and Procedural History

The parties have stipulated to the facts in this case. At the time and date of the accident, February 11, 1989, Collins was an agricultural employee of Defendant–Appellee, Glen Day (Day), whose farming operation is an agricultural enterprise. Collins broke his right leg in the accident.

The parties also stipulated that Day has not waived the exemption of agricultural employees from worker's compensation coverage. Furthermore, Day denies that any compensable injury occurred, and therefore has not paid any worker's compensation benefits to Collins.

Day moved to dismiss because Collins was an agricultural employee, and as such not covered by worker's compensation, and because Day had not waived this exemp-tion. The hearing judge granted the Motion to Dismiss.

Shortly thereafter, Collins requested that the matter be reviewed by the Full Worker's Compensation Board (Board). After conducting a hearing, the Board upheld the dismissal.

## Discussion and Decision

Collins argues that the exemption of agricultural employees from worker's compensation coverage is unconstitutional. He contends it violates the equal privileges and immunities clause of the state constitution,[1] and the equal protection clause of the federal constitution.[2] In particular, he argues the exemption is unconstitutional because it treats workers who are similarly situated in an unequal fashion. Collins cites the fact that many agricultural employees now do mechanized and other work similar in nature to that performed by factory employees who are covered by the Act.

We first note that the purpose of worker's compensation is to financially compensate employees by holding employers strictly liable for injuries incurred by the employees in the course of their employment. *Associated Insurance Companies, Inc. v. Burns* (1990), Ind.App., 562 N.E.2d 430, 433. The employee is given a statutory right to compensation, regardless of fault, and liability is limited to that provided by the Act. The basic policy is to shift the economic burden for employment related injuries from the employee to the employer and the consumers of its products. *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425, 427; *Freel v. Foster Forbes Glass Co.* (1983), Ind.App., 449 N.E.2d 1148, 1151.

We also note that certain classes of employees are "exempt" from worker's compensation coverage under the Act, as follows:

---

1. Article I, Section 23, states that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

2. The Fourteenth Amendment provides, in pertinent part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

(a) IC 22–3–2 through IC 22–3–6 shall not apply to casual laborers (as defined in IC 22–3–6–1) *nor to farm or agricultural employees*, nor to domestic servants, nor to the employers of such persons.

(b) An employer who is exempt under this section from the operation of the compensation provisions of this chapter may at any time waive such exemption and thereby accept the provisions of this chapter by giving notice as provided in subsection (c).

Ind.Code § 22–3–2–9 [emphasis supplied].

Therefore, "farm or agricultural employees" are one of the groups excluded or "exempted" from coverage. The question to be resolved is whether this exclusion is constitutionally permissible, which is an issue of first impression in Indiana.

■ In addressing an equal protection challenge, we must first determine which level of scrutiny is applicable: the traditional "rational basis" analysis or the more stringent "strict scrutiny" analysis. We apply a rational basis analysis except where the classification is suspect or involves fundamental rights. As the United States Supreme Court stated in *Massachusetts Bd. of Retirement v. Murgia* (1976), 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520, strict scrutiny applies only if the classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Examples of fundamental rights are voting, procreation, interstate travel, presenting a defense in a criminal action; while examples of suspect classes are race, gender, national/ethnic origin and alienage. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585, 597.

■ No court has ever recognized the existence of a fundamental right to worker's compensation; nor is there a suspect class from the Act. Accordingly, the appropriate level of scrutiny to apply is the rational basis analysis, which merely requires the classification to bear some rational relationship to a legitimate state interest or goal. As stated in *Sobieralski v.*

*South Bend* (1985), Ind.App., 479 N.E.2d 98, 100, *reh. denied, trans. denied:*

The rational basis test is an inquiry which involves a relatively relaxed standard, reflecting the judiciary's awareness that there can be no perfection in legislative classification, and that the drawing of lines creates unavoidable distinctions. Under the rational basis standard, the statute is presumptively valid and will not be struck down as long as the classification is rationally related to furthering a legitimate state interest. This presumption operates despite the fact that, in practice, the law results in some inequality. A statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. Finally, a statutorily based classification alleged to be discriminatory will not be overturned 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purpose that we can only conclude that the legislature's actions were irrational.'

[Citations omitted.]

■ In other words, equal protection requires only that the classification resulting in unequal treatment bear some rational relationship to a legitimate state goal. Indeed, a classification will be set aside "only if [it is] based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify [it]." *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815, 822; *see also, McGowan v. Maryland* (1961), 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393.

■ Therefore, the legislature may create classifications which treat one group differently from another, and we will sustain the classifications if they bear some rational relationship to legitimate state interests. As stated in *State ex rel. Indiana Youth Center v. Howard Juvenile Court* (1976), 264 Ind. 371, 344 N.E.2d 842, 845, "[t]he legislature is not precluded from indulging in classifications which treat one group differently from another. General-

ly, if a classification is rationally related to a legitimate purpose, it will be sustained." *See also, State ex rel. Thrasher v. Hayes* (1978), 177 Ind.App. 196, 378 N.E.2d 924, 928.

■ However, before beginning our analysis, we must address Collins' claim that the equal privileges and immunities clause of the state constitution is "not the same and should not be interpreted as being identical in intent" as the equal protection clause of the federal constitution.[3] He cites the fact that the clauses were enacted at different times in our history and employ different language. Collins concludes that the intent underlying each clause is different (with the equal privileges and immunities clause having broader application in certain cases), and for this reason, we must apply a different and stricter standard or analysis to his claim under the equal privileges and immunities clause. He first argues "there is no rational basis" for the exclusion,[4] but later argues the appropriate standard is that the exclusion does not violate the equal privileges and immunities clause if there are "distinctions [which] make one class so different from another as to necessitate different legislation with respect to each." Collins also argues "the exemption and right of election of agricultural employers under the Indiana Worker's Compensation Act, should not be permitted in the absence of a compelling state need to grant such privileges and immunities."

Collins also maintains that "[t]he framers of Indiana's Constitution were infused with a strong spirit of Jacksonian democracy and egalitarian principles." He cites one framer, John Pettit of Tippecanoe County, who, at the Indiana Constitutional

Convention of 1850, stated "[§ 23] applies to the future action of the Legislature. It declares that the Legislature shall not hereafter place one class of citizens upon a pedestal of fame and wealth, and trample another in the dust of ignominy and poverty. [applause.]" *Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana,* Vol. II, 1401 (1850). Pettit also stated that "[§ 23] is a plain, simple, unequivocal declaration of equal rights and privileges." *Id.*

■ We are not persuaded by these arguments. We have reviewed the different language of the two clauses, the framers' comments, and the cases cited in support, and conclude the same "rational basis" analysis should be applied in this case to the claim under our state's equal privileges and immunities clause as we apply to claims under the federal equal protection clause.

In the early 1970s, the Indiana Supreme Court acknowledged and determined that there were no practical differences between the clauses when it stated "the two [clauses] shall be considered synonymous with one another." *State ex rel. Miller v. McDonald* (1973), 260 Ind. 565, 297 N.E.2d 826, 829, *cert. denied* 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974). The supreme court elaborated further in *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763, 767, as follows:

[W]e see no differences in the equal protection provisions of the state and federal constitutions. Both are designed to prevent the distribution of extraordinary benefits or burdens to any group. However, the power to establish legislative classifications of persons has not been

---

**3.** We recognize here that federal cases interpreting the equal protection clause are *not* binding upon this Court in making an interpretation of our state's equal privileges and immunities clause. "Our interpretation of a state constitutional provision is an independent judicial act of this Court, and in making that judgment, federal cases have only persuasive force." *Reilly v. Robertson* (1977), 266 Ind. 29, 360 N.E.2d 171, 175. We also note that Chief Justice Shepard has recently encouraged a closer examination of the individual rights and liberties set forth in

Indiana's Bill of Rights. *See,* Shepard, *Second Wind for the Indiana Bill of Rights,* 22 Ind. L.Rev. 575 (1989).

**4.** In his reply brief, Collins seems to concede there is a rational basis for the exclusion and he cannot prevail on his federal constitutional claim, where he states "Collins cannot realistically expect to prevail under the Fourteenth Amendment as presently interpreted by the United States Supreme Court."

categorically denied but only severely limited. Rather, our courts have required only that such classifications meet certain tests. If neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable.

[Citations omitted.]

In addition, we have repeatedly held that these clauses protect identical rights and are tested by the same standard. *E.g., Sunshine Promotions, Inc. v. Ridlen* (1985), Ind.App., 483 N.E.2d 761, *reh. denied, trans. denied; Sobieralski v. City of South Bend* (1985), Ind.App., 479 N.E.2d 98, *reh. denied, trans. denied; Championship Wrestling v. State Boxing Comm'n* (1985), Ind.App., 477 N.E.2d 302, *reh. denied, trans. denied; Cunningham v. Aluminum Co. of America, Inc.* (1981), Ind. App., 417 N.E.2d 1186; *Parker v. State* (1980), Ind.App., 400 N.E.2d 796; *Lawrence v. Ball State University Bd. of Trustees* (1980), Ind.App., 400 N.E.2d 179. Other states have reached similar conclusions. *E.g., Suckow v. NEOWA FS, Inc.* (1989), Iowa, 445 N.W.2d 776, 777.

Our duty here is not to pass judgment on the wisdom of the legislature's policy excluding agricultural employees from worker's compensation, but merely to determine whether the exclusion withstands constitutional scrutiny.[5]

■ We begin our analysis with the presumption the legislation is constitutional. *Eddy v. McGinnis* (1988), Ind., 523 N.E.2d 737, 738. The party challenging the legislation has the burden to rebut this presumption, and all reasonable doubts are to be resolved in favor of the legislation's constitutionality. *Id.; Mullis v. Kinder* (1991), Ind.App., 568 N.E.2d 1087, 1090. In other words, the burden on the challenger is a heavy one, and he must show that there is no conceivable basis which may support the classification. *Sobieralski, supra.*

The conceivable bases supporting the exclusion of agricultural employees from worker's compensation may have included: (1) farmers could not afford the worker's compensation insurance premiums (any additional costs would threaten the chance of a farm being profitable); (2) farmers would be unduly burdened by the administrative inconvenience and expense of record-keeping; (3) farmers, unlike those in other sectors of the economy (such as manufacturers), ordinarily have no power to raise their prices to absorb the additional overhead costs incurred from paying the premiums, and thus are not in as good a position to pass on these costs to the ultimate consumer; and (4) the existence of a farm-oriented legislature opposed to the passage of worker's compensation.[6]

All of these reasons have been recognized as being legitimate by courts in other jurisdictions. *E.g., Baskin v. State ex rel. Worker's Compensation Div.* (1986), Wyo., 722 P.2d 151, 156 (legitimate state interest in protecting farmers from additional costs of worker's compensation and recognizing farmers are not in good position to pass on these costs to consumers); *Eastway v. Eisenga* (1985), 420 Mich. 410, 362 N.W.2d 684, 689 (legitimate state interests in protecting farmers from expense of worker's compensation and the administrative burden of maintaining records which drains time and resources, and recognizing farmers cannot absorb cost of premiums like other business entities); *Otto v. Hahn*

---

**5.** We note that many states now require worker's compensation coverage for *all* agricultural employees. Nevertheless, other states require it only under certain circumstances. For example, Iowa requires farmers to carry worker's compensation for their employees (other than excluded family members) when their total cash wage payments during the preceding year totalled more than $2,500. Iowa Code Ann., § 85.1. Thus, this law allows small family farmers (with little or no need for cash-paid employees) to remain exempt from worker's compensation, while requiring the larger agricultural enterprises (paying more than $2,500 per year to agricultural employees) to protect their employees by carrying worker's compensation.

**6.** The statistics provided by *amicus curiae* indicate that the farms in our state are comprised of approximately 60,000 family farms, 7,500 partnerships, and 2,800 corporations. Furthermore, approximately 35% of the farms use hired labor.

(1981), 209 Neb. 114, 306 N.W.2d 587, 590 (rational basis for the exclusion exists because of possible political or social reasons); *State ex rel. Hammond v. Hager* (1972), 160 Mont. 391, 503 P.2d 52, 56–57 (rational basis found for exclusion based on administrative burden and cost of worker's compensation).

The classification (which excludes agricultural employees) in our case is rationally related to furthering legitimate state interests. We note that numerous courts in other jurisdictions, both state and federal, have overwhelmingly held that exclusions of this type withstand constitutional scrutiny. *E.g., Baskin, supra; Eastway, supra; Otto, supra; Hager, supra; Cueto v. Stahmann Farms, Inc.* (App. 1980), 94 N.M. 223, 608 P.2d 535; *Anaya v. Industrial Comm'n* (1973), 182 Colo. 244, 512 P.2d 625; *Fitzpatrick v. Crestfield Farm, Inc.* (1978), Ky.App., 582 S.W.2d 44; *Middleton v. Texas Power & Light Co.* (1919), 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527; *New York Central R. Co. v. White* (1917), 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667; *Doe v. Hodgson* (2nd Cir.1973), 478 F.2d 537, *cert. denied* 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973); *Romero v. Hodgson* (N.D.Cal.1970), 319 F.Supp. 1201, *aff'd* 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971); *see also,* 82 Am.Jur.2d *Workers' Compensation* § 128 (1992).

We note that our holding does not mean that agricultural employees injured as a result of their employer's negligence are left without legal recourse. These employees may bring common law negligence actions for damages against their employers.

Affirmed.

MILLER and RUCKER, JJ., concur.